Order filed March 5, 2021.
Modified upon denial of
Rehearing April 22, 2021.

2021 IL App (5th) 180379-U

NO. 5-18-0379

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 12-CF-1181 |
| | ) | |
| JOHN C. MARTIN, | ) | Honorable |
| | ) | Stephen McGlynn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court's dismissal of defendant's *pro se* postconviction petition at the
        second stage of the postconviction proceedings is affirmed where defendant failed
        to rebut the presumption that he received reasonable assistance from his
        postconviction counsel.

¶ 2    Defendant, John C. Martin, appeals from an order of the circuit court of St. Clair County
dismissing his *pro se* postconviction petition at the second stage of the postconviction
proceedings. On appeal, defendant argues that postconviction counsel failed to provide
reasonable assistance by failing to either amend defendant's *pro se* petition to adequately present
his claims of error or withdraw from the case and state the reasons why defendant's claims
lacked merit. Defendant requests that we reverse the dismissal of the petition and remand for
further second-stage proceedings. For the reasons that follow, we affirm.

1

¶ 3                          I. Background

¶ 4     On September 7, 2012, defendant was charged in an indictment with predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)), a Class X felony punishable by 6 to 60 years' imprisonment (*id.* § 11-1.40(b)(1)). The indictment alleged that defendant "who was 17 years of age or older, knowingly committed an act of sexual penetration with a female, a minor with a date of birth of October 13, 2006, who was under 13 years of age when the act was committed, in that said defendant placed his finger in the vagina of the [victim]." The indictment also alleged that the act was committed in St. Clair County between June 21, 2012, and July 14, 2012.

¶ 5     On October 17, 2012, the circuit court entered an order stating that defense counsel had raised a *bona fide* doubt as to defendant's fitness to stand trial. In light of this, the court appointed Dr. Daniel Cuneo, a forensic psychologist, to evaluate defendant and provide a report to the court. The court also requested Dr. Cuneo to evaluate defendant's ability to waive his *Miranda* rights and provide that report only to defense counsel.

¶ 6     On November 5, 2012, Dr. Cuneo submitted a fitness evaluation report, dated October 31, 2012, in which he concluded that defendant was fit to stand trial. The circuit court subsequently held a fitness hearing on January 11, 2013.

¶ 7                      A. Dr. Cuneo's Testimony

¶ 8     At the hearing, Dr. Cuneo testified that he initially evaluated defendant at the St. Clair County jail on October 31, 2012, and prepared the evaluation report later that same day. However, due to his lingering concerns that defendant may have become unfit during the "lengthy delay" in scheduling the fitness hearing, Dr. Cuneo reevaluated defendant on January 4, 2013, and concluded that defendant remained fit to stand trial.

¶ 9    Dr. Cuneo next testified to the specifics of the evaluation. Dr. Cuneo had administered "a battery of psychological tests," to assess defendant's mental status and his intellectual, reading, and math abilities. Dr. Cuneo also reviewed defendant's clinical history and spoke with the nursing staff at the jail.

¶ 10    Dr. Cuneo observed that defendant was oriented in his person, place, and time. In other words, defendant "knew who he was, where he was," and could recite the month, day, and year. Dr. Cuneo further observed that defendant displayed "really concrete thinking," with no delusional material elicited. Defendant denied ever experiencing hallucinations.

¶ 11    Dr. Cuneo next testified to the following regarding defendant's intellectual abilities. Dr. Cuneo determined that defendant had an intelligence quotient (IQ) of 65, which put defendant's functioning ability in the bottom one percent of the nation and placed him "roughly at a level of a 10 or 11 year old." Defendant's low IQ was also consistent with his history of placement in special education classes. Dr. Cuneo reported that defendant had dropped out of school in the eighth grade and was "basically illiterate." In addition, defendant's math skills were extremely limited, defendant was unable to answer simple addition or subtraction problems without counting on his fingers, and his short-term memory was impaired. Dr. Cuneo further reported that defendant was prescribed anti-anxiety medication by his family physician, and defendant had a speech impediment that became more pronounced with increased anxiety.

¶ 12    Dr. Cuneo further testified that, despite defendant's intellectual limitations, defendant was able to adequately explain the nature of the charges, the allegations against him, and the roles of court personnel (including the judge, prosecutor, and defense counsel). Dr. Cuneo also opined that defendant could assist in his own defense. Defendant understood that his guilt would

3

be determined at a trial and, if found guilty, he would be sentenced to prison. Based on his evaluation and findings, Dr. Cuneo opined that defendant was fit to stand trial.

¶ 13 On cross-examination, Dr. Cuneo acknowledged that defendant, due to his inability read, had other inmates read his mail to him. As such, Dr. Cuneo agreed that defendant would not be able to read notes passed to him by defense counsel during trial, unless the notes were written at a 10- or 11-year-old level. Dr. Cuneo also testified that defendant's short-term memory impairment would affect, but not substantially impair, defendant's ability to communicate with counsel and assist counsel during the trial.

¶ 14                                    B. Defendant's Testimony

¶ 15 Following the circuit court's denial of defense counsel's motion for directed verdict, defendant testified on his own behalf. At the time of the fitness hearing, defendant was able to recite his age, 61 years old, and his birth date of April 27, 1951. Regarding his understanding of the proceedings, defendant explained that he was in the courtroom to determine if he understood "a jury trial and that." He also understood the nature of the charges.

¶ 16 Defendant was unable to recall how far he went in school and was unable to perform basic arithmetic. In addition, although defendant demonstrated that he was able to spell "cat," he was unable to spell "salad." Defendant acknowledged that he had difficulty reading and further displayed an inability to accurately repeat a series of four simple items, such as "dog, cat, dog, duck," responding "dog, cat, duck." Defendant further acknowledged that he was taking medication for anxiety and for a bladder condition.

¶ 17 Defendant next described his understanding of the roles of court personnel. According to defendant, his public defender would try "to see if I'm guilty," the prosecutor would "try to put me away," the judge would decide "if I'm guilty," and the role of the jury would be "to listen to

the stories and that." Defendant also testified that, if he was found guilty, he would probably go to prison for the rest of his life. Defendant understood that, if found guilty, he would have to register at the police station as a sex offender.

¶ 18    Following closing arguments, the circuit court found that defendant's mental illness did not substantially impair his ability to understand the proceedings against him or his ability to assist in his own defense. Accordingly, the court ruled that defendant was fit to stand trial and ordered the case to remain set for a status hearing on August 12, 2013.

¶ 19                    C. Partially Negotiated Guilty Plea and Sentence

¶ 20    On October 30, 2013, defendant entered a partially negotiated guilty plea, which allowed for a sentencing range of no less than 10 and no more than 20 years in prison, followed by an indeterminate period of mandatory supervised release (MSR) from 3 years to natural life (see 730 ILCS 5/5-8-1(d)(4) (West 2012)). Additionally, in exchange for defendant's guilty plea, the State agreed to dismiss several other pending charges, including predatory criminal sexual assault of a child (13-CF-1562) and attempt predatory criminal sexual assault of a child (13-CF-1563). At the subsequent sentencing hearing held on January 15, 2014, the circuit court sentenced defendant to 20 years in prison, the maximum permitted under the plea agreement.

¶ 21                    D. Postconviction Matters

¶ 22    Defendant subsequently filed both a timely motion to withdraw his guilty plea and vacate sentence and a motion to reconsider sentence. Defendant claimed that he was innocent and that he did not knowingly, intelligently, and voluntarily waive his right to a trial. Defendant also alleged that his 20-year sentence was excessive.

¶ 23    On April 2, 2014, the circuit court denied both motions. Regarding the motion to withdraw guilty plea and vacate sentence, the court stated that defendant had received the proper

5

admonitions and understood, "to a sufficient extent to meet the requirements of law," the proceedings and the consequences of his plea. Moreover, after observing that defendant had entered into a negotiated plea agreement, the court denied the motion to reconsider sentence. Shortly thereafter, defendant filed a notice of appeal with this court, and an appellate defender was appointed to represent defendant on appeal.

¶ 24    On September 17, 2015, the appellate defender sent a letter to defendant summarizing a September 14, 2015, in-person meeting. In the letter, the appellate defender informed defendant that his trial counsel filed an incomplete Rule 604(d) certificate and, given the likelihood of success on appeal, the appellate defender advised defendant of possible outcomes on a remand to the circuit court. The letter from the appellate defender, in pertinent part, reads as follows:

> "The [circuit] court might decide to let you take back your guilty plea, or it might not. If the court did let you withdraw the guilty plea, the State could take you to trial on the predatory criminal sexual assault charge in 12-CF-1181. The State could also charge you with those two 2013 cases that were dismissed. If you were found guilty on the two predatory criminal sexual assault charges, you could get a sentence of natural life. I explained that this meant that you would never get out of prison.

> I also explained that you could dismiss your appeal and choose to keep the 20 year sentence you have. Once your appeal is dismissed, you are giving up the right to challenge your guilty plea based on any errors in the record. This means that after your direct appeal is dismissed you cannot file a direct appeal again. However, you may still be able to file a post-conviction petition to raise issues that are not in the record if you wish to do so.

6

After we talked, you decided that you wanted to keep the 20 year sentence you have because it allows you to get out in 2029. Because of this, I will be filing the motion to dismiss your appeal this week."

¶ 25 On September 18, 2015, the appellate defender filed a motion to dismiss the appeal. In support of the motion to dismiss, the appellate defender attached defendant's affidavit, titled "STATEMENT OF INTENT TO HAVE APPEAL DISMISSED." In his affidavit, defendant averred that he had made the decision to dismiss the appeal after consulting with the appellate defender concerning the "relative merits of the appeal." Defendant further averred that his decision to dismiss the appeal was voluntary, and that he understood he would "forever lose [his] right to an appeal of [his] guilty plea." This court subsequently dismissed the appeal (see *People v. Martin*, No. 5-14-0174 (Sept. 23, 2015) (unpublished dispositional order)).

¶ 26 On October 25, 2017, more than two years after the voluntary dismissal of his appeal, defendant filed in the circuit court a *pro se* motion to proceed as a poor person and for the appointment of counsel. The following day, defendant filed a handwritten, *pro se* petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2016)). In the petition, defendant alleged, *inter alia*, both ineffective assistance of defense counsel and of appellate counsel but did not address the timeliness issue or provide reasons for the more than two-year delay in filing the petition.

¶ 27 Concerning his claim of ineffective assistance of defense counsel, defendant asserted that defense counsel did not follow proper procedure by failing to consult with him regarding both his motion to withdraw guilty plea and vacate sentence and his motion to reconsider sentence. Thus, defendant maintained that defense counsel's Rule 604(d) certificate filed on April 2, 2014, was "insufficient." Defendant also alleged that defense counsel was ineffective due to defense

7

counsel's failure "to call material alibi witnesses and to attack [the] credibility of [the] State[']s witness" and to file a motion to dismiss for "Illegal Felony Charging Instrument of Complaint."

¶ 28    Concerning his claim of ineffective assistance of appellate counsel, defendant alleged that appellate counsel was ineffective for failing to raise several "trial issues" related to his claim of ineffective assistance of defense counsel. In addition, defendant alleged that appellate counsel was ineffective because he failed to raise: "Functioning Mental Health Level Basis For Judgment Of Acquittal"; "Cumulative And Multiple Factor Indication For Unfitness Requirement"; "[I]nordinate [D]elay on Direct Appeal"; "Coercion," on the decision to dismiss the appeal; and a "Violation of The Americans With Disabilities Act on Direct Appeal." In support of his claims of error, defendant attached an "Appendix" comprised of 80 pages of exhibits.

¶ 29    On February 9, 2018, because the circuit court had not entered an order on the merits within 90 days of the filing of defendant's *pro se* petition for postconviction relief, the court entered an order that advanced the petition to a second-stage hearing pursuant to subsection (b) of section 122-2.1 of the Act (725 ILCS 5/122-2.1(b) (West 2016)). The court also appointed postconviction counsel to represent defendant and gave postconviction counsel 30 days to file an amended petition, which was later extended to June 15, 2018.

¶ 30    On May 11, 2018, prior to the June 15, 2018, deadline, the circuit court entered an order granting the State leave to file a motion to dismiss defendant's *pro se* postconviction petition. Shortly thereafter, the State filed its motion to dismiss, which listed the procedural history of the case, defendant's burden of proof with respect to the *pro se* postconviction petition, and the State's arguments in support of its motion to dismiss. In particular, the State asserted that defendant's *pro se* postconviction petition was untimely, his claims relating to his fitness were barred by waiver and *res judicata*, and all other claims were refuted by the record.

8

¶ 31    On June 28, 2018, postconviction counsel filed a response to the State's motion to dismiss. In the response, postconviction counsel did not address any of the State's substantive arguments, but, instead, denied each of the paragraphs pertaining to the procedural history of the case.

¶ 32    On August 1, 2018, the circuit court held a hearing on the State's motion to dismiss. The State articulated that it would stand on the arguments and caselaw provided in the motion to dismiss. However, the State reiterated its arguments that defendant's *pro se* postconviction petition was barred by the three-year limitation period provided by the Act and, alternatively, that defendant's claims were barred by waiver and *res judicata*. In response, postconviction counsel stated that the last time defendant was in court, counsel looked at defendant's *pro se* petition, and "we put on the record that it was difficult to amend it because there really weren't any legal issues that I could see that would help [defendant]." Postconviction counsel further stated that he believed "[the State's] arguments are well-taken. It's hard to get around the statute of limitations and the timing issue without even having to go into the waiver issues." Postconviction counsel explained that the timing issue was one of the reasons he did not file, or request leave to file, an amended petition because he "did not feel that it would be productive and would not help [defendant] in any way."

¶ 33    The circuit court, indicating that it had reviewed the file and the transcripts of the guilty plea proceedings many times, stated the following:

> "THE COURT: I'm a firm believer that on these post-conviction matters, if you're alerted to a substantial denial of somebody's constitutional rights, that the Court needs to find a way to make sure that there isn't some injustice that's been imposed that is not going to be corrected due to some technicality or a failure of timeliness.
>
> I think in reviewing the record, I'm confident that the fundamental issues that [defendant] has raised, concerns about the adequacy of counsel at trial, the record really does not show ineffective assistance of counsel. The record does show that the defendant

9

has significant hearing loss. It also shows that the defendant has some diminished cognitive abilities that, if nothing else, would induce us to consider that in determining whether or not he acted in a timely—he acted in a timely manner.

He was evaluated by Dr. Cuneo, he was found fit to stand trial.

I did read the plea agreement I mean, his plea in this case several times. I read the transcript. I know that he's functioning at a mild mentally retarded range of intelligence, that he was diagnosed with an anxiety disorder. And while those things you would consider, they're not—they didn't rise to the level that he did not appreciate what it was he was doing.

I looked at the way the trial judge handled this, and I thought that the trial judge adequately addressed those issues in the way the trial judge handled the taking of the plea and imposing the sentence."

The court then found that the State's motion to dismiss was appropriate and dismissed defendant's *pro se* petition for postconviction relief.

¶ 34   The next day, postconviction counsel filed a Rule 651(c) certificate, which stated:

"1. That on or about February 9, 2018, I was appointed to represent the above-named Defendant in his Pro Se Petition for Post-Conviction Relief.

2. That I have examined the entire record of the proceedings of the plea of guilty and sentencing.

3. That I consulted with Defendant by correspondence to him dated February 15, 2018, May 15, 2018 and June 18, 2018 to ascertain his contentions of deprivation of constitutional rights.

4. That I met with Defendant personally on May 11, 2018 to ascertain his contentions of deprivation of constitutional rights.

5. In reviewing the entire file[,] the undersigned determined that there were no legal issues to be raised by an amended petition.

10

6. The primary problem was that the statue [*sic*] of limitations had run on the filing of a postconviction petition.

7. That this certificate is in compliance with Supreme Court Rule 651(c)."

This appeal followed.

¶ 35                                    II. Analysis

¶ 36    On appeal, defendant argues that he did not receive reasonable assistance from postconviction counsel at the second-stage proceedings. Defendant primarily contends that postconviction counsel essentially conceded the State's motion to dismiss when postconviction counsel stated that defendant's *pro se* claims were untimely and without merit. On that premise, defendant asserts that postconviction counsel should have either amended defendant's *pro se* petition to add necessary factual assertions to adequately present the claims of error or withdrawn from the case, thereby allowing defendant to advance the claims on his own or through new counsel. Defendant urges this court to reverse the circuit court's dismissal order and remand the matter with directions that the court appoint a new postconviction counsel to properly amend and support defendant's *pro se* petition for postconviction relief or fulfill the obligation to withdraw.

¶ 37    The Act provides a remedy for a criminal defendant who can demonstrate that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2016). The procedure for adjudicating claims under the Act consists of up to three stages. *Id.* § 122-1 *et seq.*; *People v. Bailey*, 2017 IL 121450, ¶ 18.

¶ 38    At the first stage, the circuit court has 90 days to independently review the petition and determine whether the petition states the gist of a constitutional claim or should be dismissed as

11

frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016); *Bailey*, 2017 IL 121450, ¶ 18. Where, as here, an order is not entered within 90 days, the petition advances to the second stage by default. *People v. Perez*, 2014 IL 115927, ¶ 29.

¶ 39 At the second stage, an indigent defendant is appointed counsel to represent the defendant and to file any amendments to the petition deemed necessary. 725 ILCS 5/122-4 (West 2016); *Bailey*, 2017 IL 121450, ¶ 18. The circuit court then determines whether defendant has made a substantial showing of a constitutional violation, and if a substantial showing is made, the petition proceeds to the third stage for an evidentiary hearing; conversely, where no substantial showing is made, the petition is dismissed. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). Our supreme court has determined that an indigent defendant is entitled by statute to a reasonable level of assistance of counsel at the second stage, a standard that is significantly lower than the level of assistance constitutionally required at trial. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007); *People v. Custer*, 2019 IL 123339, ¶ 30.

¶ 40 Furthermore, at the second stage, the State may file a motion to dismiss the defendant's petition as being untimely. *Perkins*, 229 Ill. 2d at 43. Section 122-1(c) provides the following applicable time restrictions:

"When a defendant has a sentence other than death, no proceedings under this Article shall be commenced more than 6 months after the conclusion of proceedings in the United States Supreme Court, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a petition for *certiorari* is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a *certiorari* petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a defendant does not file a direct appeal,

12

the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.

This limitation does not apply to a petition advancing a claim of actual innocence." 725 ILCS 5/122-1(c) (West 2016).

¶ 41    A petition which is untimely will not be dismissed if the petitioner alleges facts showing the delay was not due to his or her culpable negligence. *Id*. The term "culpably negligent" means "something greater than ordinary negligence and is akin to recklessness." *People v. Boclair*, 202 Ill. 2d 89, 108 (2002).

¶ 42    When a postconviction petition is dismissed at the second stage, appellate review is *de novo*. *People v. Lander*, 215 Ill. 2d 577, 588 (2005). The question of whether postconviction counsel provided the reasonable level of assistance contemplated by the Act is reviewed *de novo*. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 31. The reviewing court may affirm the circuit court's dismissal of a postconviction petition on any basis shown in the record. *People v. Davis*, 382 Ill. App. 3d 701, 706 (2008).

¶ 43    In the instant case, defendant's petition advanced to the second stage of the proceedings by default because the circuit court did not dismiss it as frivolous or patently without merit within the 90-day period. The State subsequently filed a motion to dismiss alleging, *inter alia*, that defendant's *pro se* petition was untimely and that defendant had not alleged facts showing the delay was not due to his culpable negligence. Although defendant concedes on appeal that his *pro se* petition did not provide any factual assertions to excuse the late filing, he does not provide reasons for the untimely filing of the petition nor address the merits of the claims in his brief. Furthermore, defendant does not address the State's additional arguments of waiver and

*res judicata* raised in the motion to dismiss. Because defendant does not argue the merits of his postconviction claims, he has forfeited any argument that they were meritorious. *People v. Cotto*, 2016 IL 119006, ¶ 49; *People v. Bass*, 2018 IL App (1st) 152650, ¶ 10; Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (points not raised on appeal are forfeited). Consequently, defendant's success on appeal depends solely on his ability to rebut the presumption that postconviction counsel rendered reasonable assistance in compliance with Rule 651(c).

¶ 44    To that end, defendant specifically asserts that postconviction counsel (1) failed to amend defendant's *pro se* petition to add necessary factual allegations, both in an attempt to excuse the late filing and to show prejudice in relation to his claim of ineffective assistance of defense counsel concerning defendant's guilty plea (*i.e.*, "absent defense counsel's errors, defendant would not have plead guilty"), and (2) failed to file a proper response to the State's motion to dismiss, rather than a "bare-bones" response, which lacked any factual assertions regarding the procedural bars, such as untimeliness, and the other issues raised by the State. Defendant asserts that these failures denied him reasonable assistance of counsel in the postconviction proceedings. We disagree.

¶ 45    To ensure that a defendant who petitions the circuit court is provided reasonable assistance, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) imposes certain requirements upon postconviction counsel. Rule 651(c) mandates that the record show that postconviction counsel has:

> "consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that

are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

"Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). The filing of a Rule 651(c) certificate creates a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. "A defendant has the burden of overcoming that presumption by demonstrating that counsel failed to substantially comply with the duties set out in Rule 651(c)." *People v. Rivera*, 2016 IL App (1st) 132573, ¶ 36.

¶ 46     Following the circuit court's dismissal of defendant's *pro se* postconviction petition, postconviction counsel filed a Rule 651(c) certificate, which the State contends was facially valid and  defendant does not challenge. We also agree that postconviction counsel's Rule 651(c) certificate is facially valid, therefore, a presumption of reasonable assistance exists in the present case (see *Profit*, 2012 IL App (1st) 101307, ¶ 19). The Rule 651(c) certificate filed in this case reflects that postconviction counsel examined the entire record of the proceedings of the plea of guilty and sentencing, consulted with defendant, both in person and by correspondence, to ascertain his contentions of deprivation of constitutional rights. In addition, concerning the third requirement, postconviction counsel listed his reasons for not amending defendant's *pro se* petition. Specifically, postconviction counsel determined that amending the *pro se* petition was not necessary because "there were no legal issues to be raised by an amended petition" and that the petition was barred by the statute of limitations.

15

¶ 47    We cannot say that the presumption of reasonable assistance is rebutted based on postconviction counsel's decision to stand on the defendant's *pro se* petition. The record reflects that defendant voluntarily dismissed his appeal because he wanted to avoid the possibility of a natural life sentence after a trial. In fact, according to defendant's own affidavit, defendant decided to dismiss the appeal and was aware that he would lose all rights to a subsequent appeal. Defendant made this decision even though his appellate counsel suggested there was a potential likelihood of having his case remanded to the circuit court for further proceedings regarding his ability to withdraw his guilty plea. Moreover, even though appellate counsel had informed defendant in person and by letter, dated September 17, 2015, that he could file a postconviction petition to raise issues not in the record, defendant waited more than two years after the dismissal of his appeal to file his petition, a time frame of more than four years after the judgment of conviction. Notably, postconviction counsel also explained during the hearing on the State's motion to dismiss that he had reviewed the entire record and consulted with defendant, and he "did not feel that it would be productive and would not help [defendant] in any way" to amend the petition. Under these circumstances, we reject defendant's assertion that postconviction counsel's failure to amend the *pro se* petition was due to some deficiency, rather than a factual inability. Contrary to defendant's assertions we find no evidence in the record to support such contention.

¶ 48    Again, Rule 651(c) does not require counsel to advance frivolous or spurious claims on defendant's behalf. *Greer*, 212 Ill. 2d at 205. In our view, the record does not contradict postconviction counsel's determination that there were no legal issues to be raised by amending the *pro se* petition. To the contrary, the record affirmatively shows that defendant was afforded

16

the reasonable level of assistance provided under the Act. Defendant has, therefore, failed to rebut the presumption of reasonable assistance created by the filing of a Rule 651(c) certificate.

¶ 49    Lastly, we note that defendant also relied significantly on this court's ruling in *People v. Wallace*, 2018 IL App (5th) 140385, in support of the premise that postconviction counsel should have either amended defendant's *pro se* petition to add necessary factual assertions to adequately present the claims of error or withdrawn from the case. Defendant argues that our decision in *Wallace* is analogous to the present case. We disagree.

¶ 50    In *Wallace*, the defendant filed a *pro se* postconviction petition alleging, *inter alia*, that the circuit court's questioning during the plea proceeding failed to show that he actually understood the nature of the rights he was waiving or the consequences for doing so and that defense counsel had threatened the defendant by telling him that if he did not accept the plea agreement, " 'his charges would be turned over to the federal authorities.' " *Id.* ¶ 18. The defendant did not explicitly raise an ineffective assistance of counsel claim but merely referenced that his right to effective assistance of counsel under the sixth amendment was one of the constitutional provisions involved. *Id.* In *Wallace*, postconviction counsel did not file a certificate of compliance with Rule 651 and thus no presumption of compliance existed. *Id*. ¶ 32.

¶ 51    The vital question presented in *Wallace* was whether there was an explicit showing in the record that postconviction counsel provided reasonable assistance as required by the Act. *Id.* ¶ 31. We found postconviction counsel failed to comply with two of the three requirements under Rule 651(c). *Id.* ¶ 33. We found that the record did not explicitly show that postconviction counsel reviewed pertinent portions of the trial record, and it was necessary for postconviction counsel to amend the petition to allege ineffective assistance of postplea counsel and appellate counsel in order to allow the defendant's petition to survive the State's motion to dismiss. *Id*.

17

¶¶ 34-35. In light of this, we found postconviction counsel's failure to make such amendment fell below reasonable level of assistance. *Id.* ¶ 44.

¶ 52    Conversely, in the present case, we have previously determined that the record does not contradict postconviction counsel's compliance with Rule 651. In that regard, we specifically rejected defendant's assertion that postconviction counsel's failure to amend the *pro se* petition was due to some deficiency, rather than a factual inability. We noted that postconviction counsel expressed that there were no legal issues to be raised by amending the *pro se* petition. Thus, defendant has failed to rebut the presumption of reasonable assistance created by the filing of a Rule 651(c) certificate and, unlike *Wallace*, defendant was afforded the reasonable level of assistance provided under the Act.

¶ 53    Defendant alternatively contends that postconviction counsel, after determining that defendant's claims lacked merit, had an ethical duty to withdraw from the case pursuant to *People v. Greer*, 212 Ill. 2d 192 (2004), *People v. Shortridge*, 2012 IL App (4th) 100663, and *Wallace*, 2018 IL App (5th) 140385. Consequently, defendant argues that he was denied reasonable assistance when postconviction counsel failed to withdraw. We view defendant's reliance on *Greer*, *Shortridge*, and *Wallace* misplaced.

¶ 54    In *Greer*, 212 Ill. 2d at 195-96, the defendant, whose postconviction counsel was allowed to withdraw, contended on appeal that there was no authority for withdrawal under the Act and that he was deprived of his right to counsel by the withdrawal. The Illinois Supreme Court held that a defense counsel was under no obligation to continue representation after counsel determined that defendant's petition was frivolous and patently without merit. *Id.* at 209. The *Greer* court also concluded that ethical obligations prohibited counsel's continued representation if the claims were viewed by counsel as frivolous. *Id.* at 205; see also Ill. S. Ct. R. 137 (eff. Jan.

18

1, 2018) (an attorney's signature on a pleading certifies that, after a reasonable inquiry, the attorney believes that the pleading is grounded in fact and warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law). Thus, in that event, the Illinois Supreme Court found it permissible under the Act for defense counsel to withdraw. *Greer*, 212 Ill. 2d at 209.

¶ 55   Defendant's reliance on *Greer* is misplaced. Although *Greer* authorizes withdrawal, where a defendant's petition cannot be amended to state a meritorious claim, it did not create a requirement that counsel must withdraw instead of complying with Rule 651(c) and standing on the *pro se* petition. See *People v. Pace*, 386 Ill. App. 3d 1056, 1062 (2008) (when counsel finds defendant's postconviction claims lack merit, counsel has two options: (1) stand on the allegations in the *pro se* petition and inform the court of the reason the petition was not amended; or (2) withdraw as counsel; under both options, the claims raised in the defendant's *pro se* petition remain and proceed according to the Act). Here, unlike the defendant's counsel in *Greer*, postconviction counsel elected to continue under the first option instead of withdrawing from the case. Consistent with his Rule 651(c) certificate, postconviction counsel explained to the circuit court that the primary problem with defendant's *pro se* petition was that the petition was barred by the statute of limitations and amending the petition would neither be productive nor help defendant.

¶ 56   We also find the facts of *Shortridge* distinguishable. In *Shortridge*, the Fourth District found it impermissible for the defendant's counsel to confess the State's motion to dismiss the postconviction petition. 2012 IL App (4th) 100663, ¶ 16. The *Shortridge* court, citing *Greer*, 212 Ill. 2d at 209, stated that: "If counsel, in fact, found the allegations 'nonmeritorious,' even with any necessary amendments, then he should have moved to withdraw as counsel, *not confess the*

19

*State's motion to dismiss*." (Emphasis added.) *Shortridge*, 2012 IL App (4th) 100663, ¶ 14. The *Shortridge* court explained that its decision to reverse and remand for further proceedings "rests solely on the conduct of postconviction counsel." *Id.* ¶ 15. Despite a valid Rule 651(c) certificate, the *Shortridge* court stated that it was "virtually impossible *** to determine the merit of defendant's claims where postconviction counsel essentially did nothing to shape the claims into the appropriate legal form." *Id*. ¶ 16.

¶ 57 Thus, in *Shortridge*, postconviction counsel neither stood on the *pro se* petition nor moved to withdraw but, instead, pursued a third, impermissible alternative—confessing the State's motion to dismiss. *Id.* ¶ 6. In other words, in *Shortridge*, the circuit court entered an agreed to order of dismissal. Here, unlike *Shortridge*, postconviction counsel chose the first option, explaining to the court that the primary problem was that the petition was barred by the statute of limitations and amending the petition would neither be productive nor help defendant.

¶ 58 Next, contrary to defendant's argument, we are not persuaded that *Wallace*, 2018 IL App (5th) 140385, is controlling on the issue of whether postconviction counsel was required to withdraw. As explained above, we first note that, like the present case, we also found in *Wallace* what occurred in *Shortridge* to be significantly different. *Id.* ¶ 49. While we did observe in *Wallace* that the concerns underlying the Illinois Supreme Court's holding in *People v. Kuehner*, 2015 IL 117695 (when postconviction counsel discovers that the petition is frivolous, counsel bears the burden of demonstrating, with respect to each of the defendant's *pro se* claims, why the trial court's initial assessment was incorrect) were implicated, those same concerns do not exist in the present case. See *Wallace*, 2018 IL App (5th) 140385, ¶¶ 52-53. In *Wallace*, we expressed the following:

20

"On remand, the court should appoint a new attorney to represent the defendant. If that attorney investigates the defendant's claims and discovers that they are frivolous and patently without merit despite the court's initial finding to the contrary, we believe counsel should file a motion to withdraw that comports with the requirements of *Kuehner*. This course of action is necessary because it would enable the postconviction court to reconsider its previous ruling, as the *Kuehner* court intended. See [*Kuehner*, 2015 IL 117695, ¶ 21] (noting that a motion to withdraw under these circumstances is similar to a motion to reconsider)." *Wallace*, 2018 IL App (5th) 140385, ¶ 53.

¶ 59 Unlike *Wallace* and *Kuehner*, where the postconviction petition advanced to the second stage after the circuit court expressly found "that the petition was neither frivolous nor patently without merit" (*id*. ¶ 52), here, the petition advanced to the second stage by default. Thus, unlike in *Wallace* and *Kuehner*, a motion to withdraw with explanation of why the petition lacks merit is unnecessary as there is no ruling to be reconsidered.

¶ 60 Lastly, we reiterate that the Fourth District observed that counsel had two options when faced with meritless claims: "stand on the allegations in the *pro se* petition and inform the court of the reason the petition was not amended" or withdraw as counsel. *Pace*, 386 Ill. App. 3d at 1062. Here, consistent with his Rule 651(c) certificate, postconviction counsel explained to the circuit court that the primary problem with defendant's *pro se* petition was that the petition was barred by the statute of limitations and amending the petition would neither be productive nor help defendant. Accordingly, postconviction counsel's election to continue under the first option, instead of withdrawing from the case, does not support defendant's claim of unreasonable assistance.

¶ 61                                    III. Conclusion

¶ 62    Based on the foregoing, we conclude that defendant has not rebutted the presumption that postconviction counsel substantially complied with the duties required in Rule 651(c) and provided the reasonable assistance contemplated by the Act. For these reasons, we affirm the judgment of the circuit court of St. Clair County dismissing defendant's *pro se* postconviction petition at the second stage of the postconviction proceedings.


¶ 63    Affirmed.