NOTICE

Decision filed 07/28/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 241170-U

NO. 5-24-1170

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Pulaski County. |
| | ) | |
| v. | ) | No. 06-CF-50 |
| | ) | |
| LEO WELCH, | ) | Honorable |
| | ) | William J. Thurston, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice McHaney and Justice Boie concurred in the judgment.

**ORDER**

¶ 1 *Held*: The circuit court did not err in granting the State's second-stage motion to dismiss defendant's postconviction petition, and any argument to the contrary would lack merit; therefore, we grant defendant's appellate attorney leave to withdraw as counsel and affirm the circuit court's judgment.

¶ 2 Defendant, Leo Welch, is serving a 45-year prison sentence for home invasion while armed with a firearm. He appeals the circuit court's order granting the State's motion to dismiss his postconviction petition. His appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), concluded that this appeal presents no issue of arguable merit, and accordingly it filed a motion to withdraw as counsel, along with a memorandum of law in support of that motion. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD served the defendant with a copy of its *Finley* motion and memorandum, and this court granted him ample opportunity to respond.

1

Defendant has not done so. Having examined OSAD's motion and memorandum, as well as the entire record on appeal, this court agrees that this appeal lacks merit. We therefore grant OSAD's *Finley* motion and affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4      In September 2006, a jury found defendant guilty of residential burglary (720 ILCS 5/19-3(a) (West 2006)) and home invasion while armed with a firearm (*id.* § 12-11(a)(3)). In November 2006, a sentencing hearing was held. The circuit court found that four statutory factors in aggravation applied in this case: (1) defendant's conduct caused or threatened serious harm (730 ILCS 5/5-5-3.2(a)(1) (West 2006)); (2) defendant had a history of prior criminal activity (*id.* § 5-5-3.2(3)); (3) the sentence was necessary to deter others from committing the same crime (*id.* § 5-5-3.2(7)); and (4) defendant committed the offense against a person who was physically handicapped (*id.* § 5-5-3.2(9)). On each count, the court imposed a 45-year sentence of imprisonment, to be served concurrently, and to be followed by 3 years of mandatory supervised release.

¶ 5      On August 30, 2007, on direct appeal, this court vacated the conviction and sentence for residential burglary, due to a violation of the one-act, one-crime doctrine, but affirmed the conviction and sentence for home invasion. *People v. Welch*, No. 5-06-0670 (2007) (unpublished order under Illinois Supreme Court Rule 23). Although the cause was not remanded, the circuit court entered an amended mittimus to align with the appellate court's judgment.

¶ 6      Over 13 years later, on March 18, 2021, the clerk of the circuit court file-stamped the defendant's "proof/certificate of service." The proof of service stated, under penalty of perjury, that on March 15, 2021, the defendant placed into the prison mail system his *pro se* "Motion for Leave of the Court to File a Successive Post-conviction Petition and the actual Petition" under the

Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)). The same day, the circuit court also received two other documents from defendant titled "MOTION FOR LEAVE OF COURT TO FILE A POST-CONVICTION PETITION *INSTANTER*, ALTERNATIVELY, MOTION TO FILE A SUCCESSIVE PETITION FOR POST-CONVICTION RELIEF" and "INITIAL PETITION FOR POST-CONVICTION RELIEF." The record does not show that defendant, prior to March 2021, ever filed a postconviction petition.

¶ 7    Defendant's postconviction petition claimed that his rights to due process and a jury trial were violated where the circuit court, at sentencing, relied on the same four statutory factors in aggravation mentioned *supra* in order to "fashion[ ] a more severe sentence" for him. In support of this claim, the defendant relied on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013). *Apprendi* held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Alleyne* extended this rule to facts that increase the mandatory minimum sentence for an offense. *Alleyne*, 570 U.S. at 103. Defendant's requested relief only sought resentencing.

¶ 8    In his motion for leave to file a successive petition, defendant asserted the "cause" for not raising his claim in his (supposed) initial postconviction petition was that *Alleyne* was not decided until June 17, 2013, "almost three (3) years after his initial Post-conviction petition was due to be filed." He contended the "prejudice" that resulted was an improper extended 45-year sentence based on "elements" of his offense, *i.e.*, home invasion, in violation of *Alleyne*.

¶ 9    Accompanying the postconviction petition was a sworn affidavit, dated March 10, 2021, wherein defendant stated that in February 2021, he was in the prison's hospital, recovering from

COVID-19, when he "learned of *Alleyne v. United States*, 570 U.S. 99 (2013), and the underlying issue that I am now pressing." Defendant continued:

> "To this end, inmate advocate, Andrew Lamon, drafted the issue for me at my request and that [*sic*], I could not have raised this issue sooner because *Alleyne* wasnt [*sic*] decided until June of 2013, several years after my conviction, sentence, direct appeal and when my initial post-conviction petition should have been filed and wasnt [*sic*]."

¶ 10    Shortly after the postconviction petition was filed, the court appointed postconviction counsel for defendant. Counsel had not previously represented defendant.

¶ 11    On July 30, 2021, postconviction counsel filed a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). In it, counsel certified that he had (1) "met personally with Defendant on June 21, 2021[,] and consulted with him with respect to the allegation in his post-conviction petition"; (2) "examined the record of proceedings at the trial court"; and (3) "found no necessary amendments to the *pro-se* petition for adequate presentation of defendant's contentions."

¶ 12    In January 2022, the State filed a motion to dismiss the postconviction petition. The State argued that defendant's petition was untimely under section 122-1(c) of the Post-Conviction Hearing Act (725 ILCS 5/122-1(c) (West 2020)) and the *Apprendi-Alleyne* claim was forfeited and inapposite to this case.

¶ 13    At a status hearing on September 12, 2022, postconviction counsel requested additional time to file an amended postconviction petition on behalf of defendant. Counsel indicated a possibility of including an ineffective assistance of trial counsel claim in said petition. The court granted counsel an additional 28 days.

¶ 14    On November 7, 2022, postconviction counsel informed the circuit court that he would not be filing an amended postconviction petition. Counsel stated that he "examined the record" but was "unable to find anything [that he] could hang [his] hat on, unfortunately." Counsel went on to say that he "sent a letter to [the defendant]" stating they "were going to rest on his petition." Counsel then commented to the court that the defendant, in his *pro se* postconviction petition, "established the law which is good law that he asserts applies to this case." The defendant indicated his understanding of counsel's statements, and he indicated that he did not have any questions for counsel. Regarding the State's motion to dismiss, both parties indicated they were standing on the pleadings. The court took the State's motion under advisement.

¶ 15    On December 8, 2022, the circuit court granted the State's motion to dismiss defendant's postconviction petition. Defendant appealed, and OSAD was appointed to represent him.

¶ 16                                            II. ANALYSIS

¶ 17    On appeal, OSAD contends there is no arguable merit that the court erred in dismissing the postconviction petition where there were no meritorious grounds for relief in the petition. For the following reasons, we agree with OSAD and also find the petition untimely filed.

¶ 18    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a means whereby a criminal defendant can collaterally attack his conviction when it resulted from a substantial denial of his federal or state constitutional rights. *Id.* § 122-1(a); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act created a three-stage procedure for postconviction relief. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). At the first stage, the defendant files a verified petition with the clerk of the court in which the conviction took place (725 ILCS 5/122-1(b) (West 2020)), and the circuit court examines the petition to determine whether it is frivolous or patently without merit. *Id.* § 122-2.1. If the petition is not dismissed at the first stage, it proceeds to the second

5

stage, where section 122–4 of the Act (*id.* § 122-4) provides for the appointment of counsel for an indigent defendant. At the second stage, the State has the opportunity to either answer or move to dismiss the petition (*id.* § 122-5), and the trial court determines whether the petition makes a "substantial showing" of a constitutional deprivation. *People v. Coleman*, 183 Ill. 2d 366, 381 (1998).

¶ 19    At the second stage, all of the defendant's well-pleaded factual allegations, not positively rebutted by the record, are taken as true. *People v. Sanders*, 2016 IL 118123, ¶ 42. Where the State files a motion to dismiss the defendant's petition, it assumes the truth of the defendant's factual allegations. *People v. Hall*, 217 Ill. 2d 324, 336 (2005). If the petition is not dismissed at the second stage, it proceeds to the third stage, where the circuit court conducts an evidentiary hearing at which it engages in fact-finding and credibility determinations. 725 ILCS 5/122-6 (West 2020); *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 20    We review an order granting the State's motion to dismiss a postconviction petition *de novo*. *People v. Johnson*, 2017 IL 120310, ¶ 14. On *de novo* review, this court applies the same analysis that the circuit court would perform (*People v. Tyler*, 2015 IL App (1st) 123470, ¶ 151) and may affirm on any basis supported by the record. *People v. Stoecker*, 384 Ill. App. 3d 289, 292 (2008).

¶ 21    In its second-stage motion to dismiss the petition, the State may raise—as it did here—the issue of the petition's timeliness. See *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). A time limitation in the Act is not a jurisdictional bar but is an affirmative defense that the State can raise, waive, or forfeit. *Stoecker*, 384 Ill. App. 3d at 291. Knowing the time requirements for filing a postconviction petition is solely the responsibility of the *pro se* defendant. *People v. Lander*, 215 Ill. 2d 577, 588-89 (2005). To determine the timeliness of a postconviction petition, courts look to the time

6

restrictions that were in effect on the date the petition was filed. See *Stoecker*, 384 Ill. App. 3d at 291-92. In this case, the defendant filed his postconviction petition on March 15, 2021, when he placed it in the prison mail system. See *People v. Johnson*, 232 Ill. App. 3d 882, 884 (1992) (when a defendant is imprisoned, a postconviction petition is considered "filed" on the day it is placed in the prison mail system).

¶ 22    On March 15, 2021, section 122-1(c) of the Act read, in pertinent part: "If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2020). Our supreme court has addressed section 122-1(c) and found a literal reading was at odds with the purpose of the statute to provide a deadline for filing a postconviction petition and led to the absurd result of no deadline in cases where a defendant did not file a petition for leave to appeal to the Illinois Supreme Court or a *certiorari* petition. *Johnson*, 2017 IL 120310, ¶¶ 20-21. As such, it found under those circumstances, "a postconviction petition must be filed within six months of the date for filing a petition for *certiorari* or a petition for leave to appeal." *Id.* ¶ 24. Whereas here, defendant did not file a petition for leave to appeal, he could not file a *certiorari* petition (*id.* ¶ 20), and thus, "the six-month time period for filing his postconviction petition started to run after the expiration of the 35 days in which [he] had to file a petition for leave to appeal." *Id.* ¶ 24; see also Ill. S. Ct. R. 315(b) (eff. Oct. 1, 2020).

¶ 23    In this case, this court issued its decision in defendant's direct appeal on August 30, 2007. Any petition for leave to appeal was due 35 days after this court's judgment was entered, on October 4, 2007. Accordingly, the six-month time limitation pursuant to section 122-1(c) began running on that date and his postconviction petition was due on April 4, 2008. See *Johnson*, 2017

7

IL 120310, ¶ 24. The defendant did not file his petition until March 15, 2021—nearly 13 years after its April 4, 2008, due date.

¶ 24 An untimely petition for postconviction relief is not subject to dismissal if the delay in filing was not due to the defendant's culpable negligence. 725 ILCS 5/122-1(c) (West 2020). A defendant has the burden of establishing that the delay was not due to his culpable negligence. *People v. Mitchell*, 296 Ill. App. 3d 930, 933 (1998). "[T]he 'culpably negligent' standard contained in section 122-1(c) contemplates something greater than ordinary negligence and is akin to recklessness." *People v. Boclair*, 202 Ill. 2d 89, 108 (2002). Culpable negligence, while not intentional, involves a disregard of the consequences likely to flow from one's actions. *Lander*, 215 Ill. 2d at 587. In *People v. Hampton*, 349 Ill. App. 3d 824, 828 (2004), the court made this observation:

> "While the length of the delay alone is not dispositive, it stands to reason that a defendant who waits nearly five years beyond the statutory deadline to file a petition has more explaining to do than one who is late by less than a week. Being tardy by six days is farless inherently suggestive of recklessness than is missing the deadline by several years."

The circuit court's ultimate conclusion as to whether the established facts demonstrate culpable negligence is reviewed *de novo*. *People v. Byrd*, 2018 IL App (4th) 160526, ¶ 56.

¶ 25 Here, in a sworn affidavit, the defendant stated that in February 2021, he "learned of *Alleyne v. United States*, 570 U.S. 99 (2013), and the underlying issue that I am now pressing." Defendant contended that he could not raise the issue sooner because *Alleyne* was not decided until after his conviction, direct appeal, and when his initial postconviction petition was due.

8

¶ 26    In his affidavit, the defendant tried to create an impression that he acted expeditiously because he filed his petition just one month after learning of *Alleyne*. However, the *Alleyne* case was decided in June 2013, more than seven years prior to the petition's being filed in March 2021. No explanation was offered for this seven-year delay between the decision in *Alleyne* and the filing of the petition. See *People v. Ramirez*, 361 Ill. App. 3d 450, 453 (2005) ("Defendant offers no reason for his delay in filing a petition until over 40 months after [the case that served as the basis for his postconviction claim] was issued."). " 'All citizens are presumptively charged with knowledge of the law.' " *Boclair*, 202 Ill. 2d at 104 (quoting *Atkins v. Parker*, 472 U.S. 115, 130 (1985)). "[I]gnorance of the law will not excuse any delay in bringing a postconviction petition." *People v. Lighthart*, 2023 IL 128398, ¶ 73.

¶ 27    Furthermore, *Alleyne* was merely an extension of the *Apprendi* decision, as the defendant recognized in his postconviction petition. *Apprendi* was decided in 2000, six years before the instant case even began.

¶ 28    Therefore, the facts alleged in the defendant's sworn affidavit were insufficient to establish a lack of culpable negligence in the late filing of the postconviction petition. By the time the defendant filed his petition, the time to commence a postconviction proceeding already had passed, and the circuit court did not err in granting the State's motion to dismiss the petition.

¶ 29    Even if the defendant's postconviction petition had been timely filed, it nevertheless should have been dismissed, as *Apprendi* and *Alleyne* are inapplicable here. In his petition, the defendant claimed that the circuit court, at sentencing, used four statutory factors in aggravation in order to "fashion[ ] a more severe sentence" for him. Using judicially-found facts to increase a defendant's sentence beyond the statutory maximum was the problem addressed in *Apprendi*. See *Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for

a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). *Alleyne* merely extended the *Apprendi* rule to judicially-found facts that increase the mandatory minimum sentence for an offense. *Alleyne*, 570 U.S. at 103. The problems found in *Apprendi* and *Alleyne* are not present in the instant case.

¶ 30    Defendant was convicted of home invasion while armed with a firearm (720 ILCS 5/12-11(a)(3) (West 2006)), which was "a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court." *Id.* § 12-11(c). A Class X felony was punishable by a sentence of imprisonment from 6 to 30 years. 730 ILCS 5/5-8-1(a)(3) (West 2006). Therefore, the sentencing range for home invasion while armed with a firearm was 21 to 45 years. Once the jury at the defendant's trial returned a verdict of guilty for home invasion while armed with a firearm, the defendant was immediately subject to 21 to 45 years of imprisonment. Defendant received a sentence of 45 years, which was the maximum sentence but still within the prescribed sentencing range. The trial court thus did not violate *Apprendi* or *Alleyne* when it used the four statutory aggravating factors to increase the defendant's sentence to a sentence within the prescribed statutory range. Accordingly, defendant's postconviction petition failed to make a substantial showing of a constitutional violation and the court did not err in dismissing the petition.

¶ 31    OSAD further argues that there is no meritorious argument that counsel failed to satisfy Rule 651(c). We again agree.

¶ 32    Defendant was entitled to a "reasonable" level of assistance under the Act. See *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). "To assure the reasonable assistance required by the Act," Illinois Supreme Court Rule 651(c) imposes certain duties on counsel in postconviction proceedings. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). Under Rule 651(c), counsel must (1) communicate with the defendant to ascertain his claims of constitutional violations, (2) examine the record of

10

the trial court proceedings, and (3) make any amendments to the *pro se* petition that are "necessary for an adequate presentation" of the defendant's claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). "Substantial compliance with Rule 651(c) is sufficient." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. Where counsel files a Rule 651(c) certificate, the certificate creates a presumption that counsel complied with the rule and provided a reasonable level of assistance. *People v. Carrizoza*, 2018 IL App (3d) 160051, ¶ 13; *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23. The petitioner bears the burden of rebutting that presumption by showing that counsel did not substantially comply with his duties under Rule 651(c). *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 26. This court reviews *de novo* the question of whether postconviction counsel provided reasonable assistance. *Suarez*, 224 Ill. 2d at 41-42.

¶ 33 Here, postconviction counsel filed a Rule 651(c) certificate, and nothing in the record rebuts the presumption that counsel acted reasonably. As OSAD states in its *Finley* brief, this conclusion is true despite counsel's not making any amendments to the *pro se* postconviction petition.

¶ 34 Instead of making amendments, counsel certified that he "found no necessary amendments to the *pro-se* petition for adequate presentation of defendant's contentions." Sometime after counsel filed his certificate, and after the State filed a motion to dismiss the *pro se* petition, counsel asked the circuit court for additional time to amend the *pro se* petition, suggesting a possibility that he would add a postconviction claim of ineffective assistance of trial counsel. At a subsequent hearing, counsel informed the court that he had "examined the record" and was "unable to find anything" that could serve as the basis for an ineffective assistance claim, and counsel further informed the court that he informed defendant, in writing, they would stand on the defendant's *pro se* postconviction petition. Although defendant told the court that he understood the situation,

11

the court nevertheless explained to the defendant that his counsel had determined that "there was no ineffective assistance of counsel claim out there," and that it would be "improper" for counsel to "manufacture" an ineffective-assistance claim "just for the sake of having it."

¶ 35 The court was correct in its statements concerning the amendment of a *pro se* postconviction petition. While failure to amend a petition to reframe an issue as a claim of ineffective assistance of counsel to avoid *res judicata* often rebuts postconviction counsel's compliance with Rule 651(c) (see *People v. Turner*, 187 Ill. 2d 406, 414, 415 (1999); *People v. Holt*, 2024 IL App (5th) 220152-U, ¶¶ 19-20), "[f]ulfillment of the third obligation under Rule 651(c) [*i.e.*, the one concerning 'necessary' amendments to a *pro se* petition] does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). As such, "[i]f amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *Id.* Moreover, counsel's ethical obligations to the court would preclude counsel from presenting frivolous or patently meritless claims. See *id.* Where counsel investigates defendant's postconviction claims and finds them without merit, counsel can either stand on the *pro se* petition or withdraw as counsel. *People v. Pace*, 386 Ill. App. 3d 1056, 1062 (2008); *People v. Martin*, 2021 IL App (5th) 180379-U, ¶ 55. "If, as is the case here, counsel chose not to include a certain claim from defendant's *pro se* petition in an amended petition, one might well infer that counsel made a decision not to pursue it." *People v. Pendleton*, 223 Ill. 2d 458, 474-75 (2006). The same is true in the instant case. Postconviction counsel informed the court that he found no basis to assert an ineffective assistance claim and would proceed with the *pro se* petition. Therefore, we find postconviction counsel complied with Rule 651(c).

¶ 36                                   III CONCLUSION

¶ 37    The circuit court did not err in granting the State's motion to dismiss the defendant's postconviction petition. No argument to the contrary would have merit. Accordingly, this court grants OSAD's motion to withdraw as counsel, and it affirms the judgment of the circuit court.


¶ 38    Motion granted; judgment affirmed.