2018 IL App (4th) 160526

NO. 4-16-0526

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | McLean County |
| v. | ) | No. 10CF796 |
| | ) | |
| TIIYON T. BYRD, | ) | Honorable |
| Defendant-Appellant. | ) | Robert L. Freitag, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Presiding Justice Harris and Justice Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Tiiyon T. Byrd, appeals from the second-stage dismissal of his amended postconviction petition. On appeal, defendant argues the trial court erroneously dismissed his amended postconviction petition as untimely and this court should remand for a third-stage evidentiary hearing as his petition made a substantial showing he received ineffective assistance of plea counsel. We affirm.

¶ 2                             I. BACKGROUND

¶ 3                              A. Indictment

¶ 4        In August 2010, the State charged defendant by information with four counts of armed robbery (720 ILCS 5/18-2(a)(2) (West 2008) (counts I through IV)). The armed robberies

were alleged to have occurred on or about March 25, April 5, April 18, and July 7, 2010. The information was later superseded by indictment on each count.

¶ 5        In October 2010, the State charged defendant by indictment with one count of attempted armed robbery (720 ILCS 5/8-4, 18-2(a)(2) (West 2008) (count V)) and an additional count of armed robbery (720 ILCS 5/18-2(a)(2) (West 2008) (count VI)). The attempted armed robbery was alleged to have occurred on or about July 12, 2010, and the armed robbery was alleged to have occurred on or about July 20, 2010.

¶ 6                                B. Plea Hearing

¶ 7        At a January 7, 2011, hearing, the parties indicated they reached a fully negotiated plea agreement. As part of that agreement, defendant would plead guilty to each count in this case, be assessed $2685.85 in restitution, and serve "an agreed sentence of 34 years['] [imprisonment]" in exchange for the State moving to dismiss McLean County case Nos. 10-CF-771, 10-CF-803, 09-CM-369, 10-CM-735, 10-CM-761, 10-CM-1262, 10-CM-1396, 10-DT-477 and 09-TR-2545. According to a pretrial services bond report contained in the record on appeal, the State charged defendant in the additional McLean County cases with residential burglary, aggravated domestic battery, domestic battery, endangering the life/health of a child, criminal trespass to a residence, possession of cannabis in a penal institution, criminal trespass to a building, resisting a peace or correctional officer, possession of drug paraphernalia, possession of cannabis in an amount between 2.5 and 10 grams, possession of cannabis in an amount less than 2.5 grams, theft in an amount less than $300, driving under the influence of any amount of a drug, operating an uninsured motor vehicle, and operating a vehicle with a loud sound amplification system. The parties also indicated the agreed sentence of 34 years' imprisonment

- 2 -

would consist of consecutively imposed terms of six years' imprisonment on each armed robbery count and four years' imprisonment on the count of attempted armed robbery.

¶ 8     The trial court admonished defendant as to the charges and the possible penalties to which he desired to plead. Defendant indicated he understood. The court admonished defendant as to the rights he was giving up if he pleaded guilty. Defendant indicated he understood. The court questioned defendant if he had an adequate opportunity to consult with his counsel before making the decision to plead guilty. Defendant indicated he had. The court questioned defendant if he needed more time to talk with his counsel. Defendant indicated he did not. Defendant expressed his desire to plead guilty and signed a jury waiver.

¶ 9     The State provided the following factual basis in support of the plea:

> "If this case went to trial, we expect the witnesses would testify that between March and July, there were a number of armed robberies here in McLean County. Those include at Thorton's on March 25, 2010; Walgreen's on April 5, 2010; Beningo's on April 18, 2010; Steak 'n Shake on July 7, 2010; and Clark Gas Station on July 20, 2010.
>
> Additionally, on July 12, 2010, an attempt was made at the Shell Gas Station. At the time, an individual later identified as the [d]efendant attempted to enter the store while masked, and at that time the doors had already been locked, and he was unable to gain entry into the station.
>
> The officers obtained a description, and in the first four

robberies just mentioned, two individuals entered the stores while masked and concealing their identities and also brandishing handguns, one a revolver and one an automatic, and in the later Clark Gas Station, it was a single individual, also concealing his identity and using a handgun.

Descriptions were obtained and videos were also obtained for those individuals. The individuals were also at one point wearing blue latex gloves. One of those gloves was located near the robbery that occurred at the Steak n' Shake on July 7, 2010. A later DNA [(deoxyribonucleic acid)] match came back to an individual by the name of Buchanan, who turned out to be the co-defendant of the [d]efendant Tiiyon Byrd, who was later identified as the second individual in the first four robberies and the single individual in the Shell and Clark stations.

After two individuals were identified, a search warrant was obtained for the location where they were found. The search warrant turned up several items of identification that matched the descriptions of the robbers.

Also, the two handguns were also located. Those handguns were later sent to the [c]rime [l]ab, in addition to the glove, and the [d]efendant's DNA was found on one or both of those handguns as a mixture.

- 4 -

Also, after the two individuals were apprehended, Mr. Buchanan did in fact acknowledge his part in the armed robberies and did in fact identify the [d]efendant as his accomplice or the second individual in the robberies and matched the photos of the two that were done singularly by one individual. All of the events occurred in McLean County."

Defendant stipulated that the State could produce witnesses who would testify substantially as indicated, and the trial court found the factual basis sufficient to support the plea.

¶ 10 The trial court questioned defendant if he had any questions before it accepted his plea. Defendant indicated he did not. The trial court accepted defendant's plea, finding it to be knowingly and voluntarily made, and then sentenced him as provided in the plea agreement and entered an order of restitution. The court further dismissed the additional McLean County cases.

¶ 11 After rendering its sentence, the trial court admonished defendant as to his appellate rights. Specifically, the court admonished defendant as follows:

"The only way you could ever appeal what has happened here today is to first file within 30 days in writing a motion to withdraw your guilty plea. You don't get to just change your mind because you feel like it. You would have to have a good legal reason to be allowed to do that.

[Plea counsel] remains your appointed counsel for the next 30 days, and if he filed a motion like that on your behalf, we'd hold a hearing about it, and if I thought you had a good legal

reason, I would let you take the plea back, we would reinstate all of the six counts that you just plead[ed] to, plus the State could reinstate all the charges in all the cases that just got dismissed, and we would essentially go back and start over where we were at the start of this hearing. Everything would be set for trial and we would go from there and resolve the cases with you being subject to the maximum penalties that I explained to you in any of the charges plus the maximum penalty in any of these cases that got dismissed.

If I held a hearing on your motion and I thought you didn't have a good legal reason, I would deny your motion, and then you would get 30 additional days in which you would have to file a written notice of appeal with the Clerk, and only be following that procedure can you appeal to the Appellate Court down in Springfield about what may have happened here today. You cannot raise issues unless you put them in the written motion, so anything you leave out is waived.

You have the right to counsel, and counsel if you can't afford it, for the whole process in the trial court as well as the appeal in Springfield, and you have the right to a free transcript of any proceedings that might be necessary to have a hearing on your motion or to appeal down in Springfield."

The court questioned defendant if he understood his appellate rights. Defendant indicated he did.

¶ 12                                C. Defendant's Letter to the Trial Court

¶ 13        In April 2011, defendant sent a letter to the trial court inquiring into his "plea-withdrawal process." The letter was dated April 5, 2011. In the letter, defendant acknowledged "[i]t's been well over my time limit so I'm definitely concerned with what exactly is going on." Defendant asserted both he and his family wrote his plea counsel but received no response. Defendant requested "to get back into court" because he was not in his "right state of mind" when he pleaded guilty. Defendant asserted he was "forced" to believe accepting the plea offer was his "best bet." Defendant indicated his research in the prison law library led him to realize his plea counsel did not act in his best interest. Defendant asserted he "lied" to the court when it asked him if he was satisfied with how his counsel handled his case at the plea hearing. Defendant requested a response from the court as to his next step, as he had not received a response from his counsel.

¶ 14                D. Untimely *Pro Se* Motion to Withdraw the Guilty Plea

¶ 15        On April 13, 2011, the trial court entered a docket entry indicating it reviewed defendant's April 5, 2011, letter and construed it to be a *pro se* motion to withdraw his guilty plea. The court then struck the *pro se* motion, finding it to be untimely as the plea was entered on January 7, 2011.

¶ 16                                E. Notice of Appeal

¶ 17        On May 11, 2011, defendant placed in the institutional mail a *pro se* "Late Notice of Appeal." Later that month, this court granted defendant leave to file his notice of appeal and appointed the office of the State Appellate Defender (OSAD) to represent him on appeal.

- 7 -

¶ 18                                    F. Direct Appeal

¶ 19            On July 28, 2011, OSAD, on defendant's behalf, filed a motion to dismiss the appeal. In the motion, OSAD asserted dismissal was necessary as (1) the trial court properly admonished defendant as to his appellate rights and (2) defendant failed to comply with the requirements of Illinois Supreme Court Rule 604(d) (eff. July 1, 2006). OSAD also indicated it advised defendant of the availability of postconviction procedures.

¶ 20            On August 1, 2011, this court granted the motion to dismiss the appeal.

¶ 21            On August 17, 2011, defendant placed in the institutional mail a *pro se* "Petition for Rehearing." In the petition, defendant requested this court to reconsider the dismissal of the appeal as he was not provided an opportunity to respond to the motion to dismiss.

¶ 22            On August 30, 2011, this court vacated the order dismissing defendant's appeal, reinstated the case, and granted defendant the opportunity to respond to the motion to dismiss the appeal by September 20, 2011.

¶ 23            Shortly before the September 20, 2011, deadline to file a response to the motion to dismiss the appeal, defendant filed a *pro se* motion for an extension of time. Defendant's *pro se* motion was file-stamped on September 19, 2011. That same day, this court granted the motion and extended the deadline to file a response to October 11, 2011.

¶ 24            On October 7, 2011, defendant placed in the institutional mail a *pro se* response to the motion to dismiss the appeal. In the response, defendant requested this court deny the motion to dismiss as both his appellate and plea counsel provided ineffective assistance. Specifically, defendant argued his plea counsel provided ineffective assistance by failing to file a motion to withdraw his guilty plea after being requested to do so and his appellate counsel provided

- 8 -

ineffective assistance by moving to dismiss the appeal rather than pursuing a claim concerning plea counsel's performance. Defendant acknowledged his appellate counsel suggested he file a *pro se* postconviction petition. Defendant asserted composing such a petition would be difficult due to his lack of legal training and would result in unnecessary delay.

¶ 25 On October 26, 2011, this court granted the motion to dismiss the appeal over defendant's objection.

¶ 26 G. *Pro Se* Postconviction Petition

¶ 27 On December 5, 2012, defendant placed in the institutional mail a *pro se* postconviction petition. In the petition, defendant alleged, in part, that he received ineffective assistance because plea counsel (1) failed to investigate an alibi for the July 20, 2010, armed robbery and (2) failed to file a motion to withdraw the guilty plea after being requested to do so. Defendant attached to his petition a personal affidavit swearing he was at Bromenn Hospital for the birth of his child the "whole entire day and night" of July 20, 2010, as well as affidavits of his mother and aunt swearing he was at the hospital that "entire" day. Defendant also attached copies of January 14, 2011, emails between plea counsel and defendant's mother. In those emails, defendant's mother inquired into the appeal process for her son, to which plea counsel responded as follows:

"As I have explained to [defendant] and as the [j]udge explained to [defendant], [i]f he wishes to appeal his plea and sentencing, he must file, within 30 days of the date of his plea[,] a written motion asking to take his plea agreement back and listing all of his reasons therefor[e]. I remain his attorney for those 30

days. If that is filed, I will get a transcript and review it for any other causes for the judge to set aside what appears to be a valid agreement. There would be a hearing and, at that time or shortly thereafter, the judge would rule. If he grants the motion, [defendant] would be back in the same position he was in last Friday a.m., charged in all cases and headed for trial on 10-CF-796. All dismissed charges would be reinstated; if [defendant] gets to start over, the State would be afforded the same right. The prosecutor is never required to make any offers. Having offered, as in this case, he is in no way obligated to ever offer again. The great likelihood is that the judge would deny the motion. If the motion were denied, then [defendant] could ask that a [n]otice of [a]ppeal be filed and hire an attorney or have the judge appoint [OSAD]. Recall that, given my review of the case to which he plead[ed], he was properly charged and the State could have produced witnesses who would have testified substantially as indicated."

¶ 28          H. *Pro Se* Postconviction Petition Advanced to Second Stage

¶ 29          In March 2013, the trial court advanced defendant's *pro se* postconviction petition to the second stage of postconviction proceedings and appointed counsel to represent him.

¶ 30                              I. Motion to Dismiss

¶ 31          In December 2015, the State filed a motion to dismiss defendant's *pro se* postconviction petition. In the motion, the State argued dismissal was proper as the petition

- 10 -

(1) was untimely and (2) failed to make a substantial showing of a constitutional violation.

¶ 32                                   J. Amended Postconviction Petition

¶ 33          In May 2016, defendant, through postconviction counsel, filed an amended postconviction petition. Defendant's postconviction counsel also filed a certificate in compliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013).

¶ 34          In the amended postconviction petition, defendant initially addressed the issue of timeliness. Defendant argued "[t]he record in this case supports a finding that [the] delay in filing his post[ ]conviction petition was not due to his culpable negligence." Citing a March 2012 request for discovery and transcripts and an August 2012 request for a copy of his April 5, 2011, letter to the trial court, defendant argued that he "was doing all he knew to do in order to obtain the proper documents to prepare his post[ ]conviction petition." Defendant attached his March and August 2012 requests for documents to his amended postconviction petition.

¶ 35          After addressing the issue of timeliness, defendant alleged claims of ineffective assistance of plea counsel. In part, defendant asserted his plea counsel provided ineffective assistance by failing to (1) "investigate certain matters regarding his alibi," (2) "challenge the State's evidence," and (3) "file [a] motion to withdraw [his] guilty plea."

¶ 36          Defendant argued plea counsel's ineffective assistance—by failing to investigate certain matters regarding his alibi—impacted his ability to knowingly and voluntarily plead guilty. Defendant alleged he told counsel he would not plead guilty to the July 20, 2010, armed robbery as he did not commit that offense, to which counsel advised him the State did not have a case. Defendant alleged counsel later advised him at a final pretrial hearing " 'he had not a fighting chance, and the best thing he could do for himself at this moment, would be to take the

State's offer of 34 years.' " Defendant asserted counsel's change in advice caused him to believe he had no other choice than to plead guilty. That is, he "felt all hope was lost since his *** counsel did not do any investigation and was telling him he would be found guilty at trial." Defendant attached his *pro se* postconviction petition, including his personal affidavit and the affidavits of his mother and aunt, to his amended postconviction petition.

¶ 37        Defendant argued plea counsel's ineffective assistance—by failing to challenge the State's evidence—impacted his ability to knowingly and voluntarily plead guilty. Defendant asserted the State failed to present any evidence before the grand jury or in its factual basis, indicating the attempted armed robbery was committed with a firearm. Defendant further asserted he was prejudiced by counsel's failure to challenge the State's evidence because "at the very least as far as [c]ount [V] is concerned *** he would have gone to trial and been found not guilty because the State would not have been able to prove all the elements of that count." Defendant attached copies of transcripts from the grand jury and plea proceedings to his amended postconviction petition.

¶ 38        Defendant argued plea counsel provided ineffective assistance by failing to file a motion to withdraw his guilty plea after being requested to do so. Defendant alleged he wrote plea counsel several times, telling him "he wanted to withdraw his guilty plea," but counsel never responded. Defendant also alleged he requested his family to ask plea counsel to file a motion to withdraw the guilty plea on his behalf. As to the grounds that could have been raised in a motion to withdraw the guilty plea, defendant asserted he "would have alleged that his guilty plea was not knowing and voluntary based on [plea counsel's ineffective assistance by failing to investigate an alibi and challenge the State's evidence]." Defendant attached a copy of his April

5, 2011, letter to the trial court and copies of the January 14, 2011, emails between plea counsel and defendant's mother.

¶ 39                    K. Hearing on the State's Motion to Dismiss

¶ 40        Following a July 2016 hearing, the trial court dismissed defendant's amended postconviction petition, finding it was untimely and defendant failed to show the delay was not due to his culpable negligence. The court also found dismissal was proper as the petition failed to make a substantial showing of a constitutional violation.

¶ 41        This appeal followed.

¶ 42                            II. ANALYSIS

¶ 43        On appeal, defendant argues the trial court erroneously dismissed his amended postconviction petition as untimely and this court should remand for a third-stage evidentiary hearing as his petition made a substantial showing he received ineffective assistance of plea counsel. The State disagrees.

¶ 44        Defendant argues the trial court erroneously dismissed his amended postconviction as untimely. Specifically, defendant asserts the court applied the wrong limitations period and postconviction counsel provided unreasonable assistance by failing to identify the correct limitations period. Alternatively, defendant asserts even if the court applied the correct limitations period and his petition is untimely, the late filing was not due to his culpable negligence and postconviction counsel provided unreasonable assistance by failing to assert the court and plea counsel were the parties culpable for the late filing.

¶ 45        Section 122-1(c) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(c) (West 2012)) provides, in part, as follows:

"When a defendant has a sentence other than death, no proceedings under this Article shall be commenced more than 6 months after the conclusion of proceedings in the United States Supreme Court, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence."

Our supreme court has also read into section 122-1(c) a six-month limitations period from the date for filing a petition for leave to appeal. *People v. Johnson*, 2017 IL 120310, ¶ 24, 77 N.E.3d 615 (construing the statute as "provid[ing] that a postconviction petition must be filed within six months of the date for filing a petition for *certiorari* or a petition for leave to appeal").

¶ 46    Defendant, for the first time on appeal, asserts his postconviction petition was timely as it was filed within three years from the date of his conviction and his postconviction counsel provided unreasonable assistance for failing to argue so before the trial court. Specifically, defendant argues the three-year limitations period applies because he "could not pursue a direct appeal" due to his failure to comply with Illinois Supreme Court Rule 604(d) (eff.

Sept. 1, 2006). In support of his argument, defendant cites *People v. Flowers*, 208 Ill. 2d 291, 301, 802 N.E.2d 1174, 1180 (2003), for the proposition the failure to file a timely Rule 604(d) motion generally precludes a reviewing court from considering an appeal on the merits and results in dismissal. Defendant also—for the first time in his reply brief—cites *People v. Ross*, 352 Ill. App. 3d 617, 619-20, 818 N.E.2d 738, 740-41 (2004), which found "no direct appeal was taken" and the three-year limitations period applied where a defendant's appeal was dismissed for the failure to file a timely Rule 604(d) motion. Defendant also requests, citing *People v. McDonald*, 2018 IL App (3d) 150507, ¶ 23, 95 N.E.3d 1, we apply the rule of lenity and construe any ambiguity in the statute in his favor.

¶ 47      The State asserts the three-year limitations period does not apply because defendant "file[d] a direct appeal." Specifically, the State contends the filing of a notice of appeal constitutes the filing of a direct appeal and defendant's failure to comply with Illinois Supreme Court Rule 604(d) (eff. Sept. 1, 2006) does not negate the fact a direct appeal was filed. In support of its argument, the State cites the plain language of the statute, as well as *Johnson*, 2017 IL 120310, ¶ 23, which noted section 122-1(c) "even provides a three-year deadline for filing a petition when no notice of appeal is filed."

¶ 48      Defendant's argument presents a question of statutory interpretation. "The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent." *Id.* ¶ 15. "The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning." *Id.* "If the language of a statute is clear and unambiguous, we will give effect to the statute's plain meaning without resort to other aids of statutory construction." *In re Jarquan B.*, 2017 IL 121483, ¶ 22, 102 N.E.3d 182.

¶ 49　　　　　　The relevant part of the statute states: "If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2012). The three-year limitations period is applicable only if a defendant "does not file a direct appeal." *Id.* Based on the clear and unambiguous language of the statute, it is the act of filing a direct appeal that precludes the three-year limitations period from applying. Contrary to defendant's argument, the three-year limitations period is not conditioned on the "pursuit" of an appeal or the manner in which it is resolved.

¶ 50　　　　　　In reaching this decision, we find *Ross* to be distinguishable. At the time that decision was rendered, section 122-1(c) provided, in part, as follows:

> "No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed *** or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2002).

Public Act 93-972, § 10 (eff. Aug. 20, 2004), amended section 122-1(c) to include language indicating the three-year limitations period applies only "[i]f a defendant does not *file* a direct appeal." (Emphasis added.) This additional language makes *Ross* distinguishable. See *Jarquan B.*, 2017 IL 121483, ¶ 22 ("[W]e must construe words and phrases *** so that, if possible, no term is rendered superfluous or meaningless.").

¶ 51 Having concluded the statutory language is clear and unambiguous, we also need not address defendant's request for us to apply the rule of lenity to the Act. See *Johnson*, 2017 IL 120310, ¶ 30 ("Pursuant to the rule of lenity, ambiguous criminal statutes will generally be construed in the defendant's favor.").

¶ 52 We must next address what constitutes the filing of a direct appeal. In *Johnson*, 2017 IL 120310, ¶ 12, the defendant argued no filing deadline existed under section 122-1(c) of the Act (725 ILCS 5/122-1(c) (West 2008)) when no petition for leave to appeal is filed, as the statute was silent on the issue. In rejecting the defendant's argument on the ground it would lead to an absurd and unjust result not intended by the legislature, the court noted:

> "The statute even provides a three-year deadline for filing a petition when no notice of appeal is filed. We see no reason for the legislature to provide a deadline when no notice of appeal has been filed but not to include one when no petition for leave to appeal has been filed." *Johnson*, 2017 IL 120310, ¶ 23.

While the issue of what constitutes the filing of a direct appeal was not directly before the court, we find the court's comments, suggesting it is the filing of a notice of appeal, to be persuasive. Illinois Supreme Court Rule 606(a) (eff. Mar. 20, 2009) provides "[a]ppeals shall be perfected by filing a notice of appeal." If the filing of a notice of appeal commences a direct appeal, it follows the filing of a notice of appeal constitutes the "fil[ing] [of] a direct appeal" for purposes of section 122-1(c), thereby precluding the three-year limitations period from applying.

¶ 53 Here, defendant elected to seek appellate review by filing a *pro se* late notice of appeal. The filing of that notice of appeal commenced his direct appeal and precluded the three-

year limitations period from applying. Defendant's postconviction counsel therefore could not have provided unreasonable assistance by failing to raise an argument to the contrary before the trial court.

¶ 54　　　　Defendant alternatively asserts even if the trial court applied the correct limitations period and his petition is untimely, the late filing was not due to his culpable negligence, postconviction counsel provided unreasonable assistance by failing to identify the court, and plea counsel were the parties culpable for the late filing.

¶ 55　　　　As an initial matter, the record is clear defendant did not file his postconviction petition within the applicable limitations period. Again, our supreme court has read into section 122-1(c) a six-month limitations period from the date for filing a petition for leave to appeal. *Johnson*, 2017 IL 120310, ¶ 24. On October 26, 2011, this court dismissed defendant's direct appeal. Defendant had 35 days from that date to file a petition for leave to appeal. Ill. S. Ct. R. 315(b)(2) (eff. Feb. 26, 2010); R. 612(b)(2) (eff. Sept. 1, 2006). The six-month period for filing a postconviction petition started to run after the expiration of that 35-day period. *Johnson*, 2017 IL 120310, ¶ 24. The postconviction petition defendant placed in the institutional mail on December 5, 2012, was clearly beyond the six-month limitations period.

¶ 56　　　　The failure to file a postconviction petition within the applicable limitations period may be excused if the defendant "alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2012). Culpable negligence refers to " 'something greater than ordinary negligence and is akin to recklessness.' " *Johnson*, 2017 IL 120310, ¶ 26 (quoting *People v. Boclair*, 202 Ill. 2d 89, 108, 789 N.E.2d 734, 745 (2002)). We review a trial court's ultimate conclusion as to whether the established facts demonstrate

culpable negligence *de novo*. *People v. Flowers*, 2015 IL App (1st) 113259, ¶ 45, 24 N.E.3d 1240.

¶ 57        Defendant's primary argument, raised for the first time on appeal, as to why the late filing was not due to his culpable negligence concerns the "triggering event that caused the abbreviated deadline." Defendant asserts "the inciting incidents for th[e] abbreviated deadline were the trial court's improper admonishments and plea counsel's failure to file a motion to withdraw [his] guilty plea." Defendant further contends postconviction counsel provided unreasonable assistance by failing to assert the court and  plea counsel were the parties culpable for the late filing.

¶ 58        Under section 122-1(c), a defendant must show his or her delay in filing the petition within the applicable limitations period was not due to his or her culpable negligence. 725 ILCS 5/122-1(c) (West 2012); see also *Johnson*, 2017 IL 120310, ¶ 26 ("A petition that is untimely will not be dismissed if the petitioner alleges facts showing that the delay in filing the petition was not due to his or her culpable negligence."). Defendant's assertion he was not culpable for the "triggering event" that caused the "abbreviated deadline" is an attempt to seek review of claims he could have raised in his direct appeal or postconviction petition. These events do not demonstrate cause for why he did not file his postconviction petition within the applicable limitations period. Defendant's postconviction counsel therefore could not have provided unreasonable assistance for failing to raise this argument before the trial court.

¶ 59        Defendant's other arguments as to why the late filing was not due to his culpable negligence are also meritless. Defendant asserts his age and lack of legal training prevented him from preparing his postconviction petition within the "abbreviated deadline." Setting aside

defendant's extensive history of *pro se* filings with this court while imprisoned, our supreme court has made clear ignorance of the law does not excuse a delayed filing. *Boclair*, 202 Ill. 2d at 104. Defendant asserts his imprisonment prevented him from preparing his postconviction petition within the "abbreviated deadline." Imprisonment alone does not excuse a delayed filing. See *People v. Upshaw*, 2017 IL App (1st) 151405, ¶¶ 24-25, 89 N.E.3d 1049 (finding a delay was not due to the defendant's culpable negligence where the defendant showed he was subject to a prison lockdown for a substantial amount of time and prison staff lost his trial transcripts and legal materials). Finally, defendant asserts the delay was not due to his culpable negligence because section 122-1(c) does not clarify the applicable limitations period "when a defendant cannot pursue a direct appeal on the merits." The filing of a direct appeal alone precludes the three-year limitations period from applying.

¶ 60          Defendant failed to show the delay in filing his postconviction petition was not due to his culpable negligence. The trial court properly dismissed defendant's amended postconviction petition as untimely, and we need not address the court's alternative ground for dismissal.

¶ 61                                    III. CONCLUSION

¶ 62          We affirm the trial court's dismissal of defendant's amended postconviction petition and award the State its $75 statutory assessment as costs of this appeal (55 ILCS 5/4-2002(a) (West 2016)).

¶ 63          Affirmed.