2022 IL App (2d) 210197
No. 2-21-0197
Opinion filed March 15, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 02-CF-3683 |
| JESSICA R. LIGHTHART, | ) ) ) | Honorable Robert Randall Wilt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court, with opinion.
Justices Hutchinson and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Jessica R. Lighthart, appeals the trial court's dismissal of her postconviction petition as untimely at the second stage of postconviction proceedings. Defendant entered a negotiated guilty plea for first-degree murder, and, after her sentencing, she moved to withdraw her plea and vacate her sentence. At issue in this appeal is whether defendant's filing of a notice of appeal from the trial court's denial of her motion to withdraw her plea and vacate her sentence constituted the filing of a direct appeal for purposes of section 122-1(c) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(c) (West 2006)). Because we determine that defendant did file a direct appeal for purposes of section 122-1(c), the relevant filing period for her postconviction petition was six months from the date she had to file a petition for leave to appeal.

She filed her petition beyond the six-month period, and therefore we affirm the dismissal of her postconviction petition as untimely.

¶ 2                                                   I. BACKGROUND

¶ 3      On January 10, 2003, defendant was charged in a 15-count indictment with first-degree murder, among other offenses. On June 15, 2004, defendant pled guilty to count I, which alleged that she and a codefendant committed first-degree murder in that they, while attempting to commit the forcible felony of armed robbery, fatally shot a man. As part of her plea deal, the other 14 counts were dismissed. Her plea deal did not specify her sentence beyond setting a cap of 35 years. Per trial counsel, defendant was entering the plea deal to avoid the possibility that she be found guilty at trial and sentenced to natural life. The trial court asked defendant if she understood that, after she pled guilty, she could be sentenced to a term from 20 to 35 years' imprisonment, and she responded yes. She also said that she understood that she would not be allowed to withdraw her plea of guilty simply because she did not like the sentence imposed. On August 13, 2004, she was sentenced to 35 years.

¶ 4      Through trial counsel, defendant moved to reconsider her sentence, and the motion was heard and denied on October 1, 2004. On October 14, 2004, defendant moved *pro se* to withdraw her plea and vacate her sentence, asserting that she received inadequate representation by counsel. Through appointed counsel, defendant filed on February 14, 2006, an amended motion to withdraw her guilty plea and vacate her sentence. That same day, the trial court heard and denied her amended motion.

¶ 5      On February 21, 2006, defendant, through appointed counsel, filed a notice of appeal from the denial of her motion to withdraw her guilty plea and vacate her sentence. We dismissed her appeal on September 19, 2006, finding that we lacked jurisdiction because the notice of appeal

was untimely. *People v. Lighthart*, No. 2-06-0201 (2006) (unpublished order under Illinois Supreme Court Rule 23). We explained that the only appealable order was the August 13, 2004, judgment of conviction, entered following her sentencing, and the only timely motion filed against that judgment was her August 17, 2004, motion to reconsider her sentence. *Id.* at 4. The time to appeal began to run on October 1, 2004, when the trial court denied her motion to reconsider her sentence, and defendant's October 14, 2004, motion to withdraw her guilty plea and vacate the judgment was not timely and did not extend the time available to appeal. *Id.*

¶ 6      Defendant filed a *pro se* postconviction petition on August 10, 2007. On the form petition, she circled that she appealed her conviction to the Illinois Appellate Court and separately circled that she did not petition to the Illinois Supreme Court. Her claim for relief was that her trial counsel was ineffective in failing to advise her that she could appeal her guilty plea, resulting in her untimely direct appeal. She also claimed ineffective assistance in advising her to take an open plea and not a guaranteed plea of 27 years, in failing to go through records and discovery with her, and in failing to pursue records of a codefendant's abuse against her.

¶ 7      On October 3, 2007, the trial court summarily dismissed defendant's petition at the first stage of postconviction proceedings as frivolous and patently without merit. Defendant appealed, and we reversed. *People v. Lighthart*, No. 2-07-1079 (2009) (unpublished order under Illinois Supreme Court Rule 23). The issue on appeal was whether defendant's postconviction petition stated the gist of a constitutional claim that her trial counsel was ineffective in failing to perfect her direct appeal. *Id.* at 6. We explained that, by filing a postjudgment motion, trial counsel exhibited awareness of defendant's interest in challenging the judgment and that therefore counsel was required to move to withdraw the plea and, upon denial of that motion, file a notice of appeal. *Id.* at 9. We remanded for further proceedings under the Act. *Id.* at 10.

¶ 8    Defendant, through appointed counsel, filed an amended petition for postconviction relief on August 24, 2018. Therein, she raised three grounds under which she was denied effective assistance of counsel: (1) trial counsel's failure to present evidence of domestic violence against defendant in mitigation at the sentencing hearing, (2) trial counsel convincing defendant to reject a plea agreement for a 27-year sentence, and (3) trial counsel's failure to discuss with defendant the possibility of filing a motion to withdraw her guilty plea and ultimate failure to timely file such a motion, causing defendant's direct appeal to be untimely.

¶ 9    Through private counsel, defendant filed a supplemental petition for postconviction relief on January 3, 2020. The supplemental petition incorporated the amended petition for postconviction relief and provided affidavits to support two arguments that trial counsel was ineffective: two affidavits supporting that trial counsel failed to interview witnesses who knew of the domestic abuse against defendant by her codefendant and one affidavit supporting that trial counsel failed to move to withdraw defendant's guilty plea.

¶ 10   The State moved on December 7, 2020, to dismiss defendant's supplemental and amended postconviction petitions. The State argued, *inter alia*, that defendant's original postconviction petition was untimely under section 122-1(c) of the Act (725 ILCS 5/122-1(c) (West 2006)), asserting that she had until April 23, 2007, which was six months from the date to file a *certiorari* petition, to file a postconviction petition.

¶ 11   Defendant responded that her original postconviction petition was timely, arguing that she did not file a direct appeal, due to trial counsel's ineffectiveness, and therefore the State's six-month filing period was inapplicable. She continued that, under section 122-1(c) of the Act, she had three years from the date of her conviction to file her petition, and thus her August 10, 2007, postconviction petition was timely.

¶ 12    The trial court heard the State's motion to dismiss on February 22, 2021, and it asked the parties to address *People v. Byrd*, 2018 IL App (4th) 160526. The State argued that the statutory six-month period applied to defendant's original postconviction petition, that it was filed several months beyond the six-month period, and that it was therefore untimely. It argued that *Byrd* was on point and supported a six-month period. Defendant argued that *People v. Ross*, 352 Ill. App. 3d 617 (2004), directly contradicted *Byrd* and that *Byrd* was wrongly decided. She contended that she did not file a direct appeal, because she was jurisdictionally barred from filing the appeal due to trial counsel's failure to move to withdraw her guilty plea and vacate the judgment.

¶ 13    Defendant also argued that the State forfeited its timeliness argument. She argued that timeliness was an affirmative defense that had to be pled with specificity and that the State's timeliness argument in its motion to dismiss was "very generic" and did not incorporate the *Byrd* case. She further argued that the State's motion failed to reference the three-year period applicable when a defendant does not file a direct appeal. Defendant later clarified that she was not arguing that the State forfeited its entire timeliness argument; she was arguing that it forfeited only the argument based on *Byrd* that the filing of a notice of appeal constituted the filing of a direct appeal.

¶ 14    The trial court was "totally confused" by defendant's claim that the State forfeited its argument, given that the State could not raise a timeliness argument before the second stage of postconviction proceedings. The State had argued that the six-month period applied, which put her on notice as to what the State thought the applicable timeframe was under the governing statute. At the end of the hearing, the trial court asked the parties to address whether it was bound by *Byrd* or *Ross*. In response, defendant filed a "Memorandum of Law on Conflicting Appellate Decisions on Timeliness," arguing that the trial court should follow the *Ross* decision.

¶ 15    On March 17, 2021, the trial court dismissed defendant's postconviction petition. In its order, the trial court rejected defendant's argument that the State forfeited its timeliness argument. Further, it rejected her argument that she did not file a direct appeal. It found *Byrd* to be on point, explaining that *Byrd*, unlike *Ross*, interpreted the relevant statutory language as it existed when defendant's direct appeal was dismissed and when she filed her original postconviction petition. Accordingly, it found that defendant's August 10, 2007, postconviction petition was filed outside the applicable statutory period, and it granted the State's motion to dismiss.

¶ 16    Defendant timely appealed.

¶ 17                                    II. ANALYSIS

¶ 18    At issue in this appeal is whether the trial court erred in granting the State's motion to dismiss defendant's postconviction petition. Defendant advances two arguments: (1) the trial court erred in dismissing her postconviction petition on timeliness grounds, because she had three years from the date of her conviction to file her petition, and (2) the trial court improperly acted as an advocate in raising the timeliness issue when the State had forfeited such argument. We address defendant's latter argument first.

¶ 19                          A. Forfeiture and the Trial Court's Role

¶ 20    Defendant argues that the State was required to raise its timeliness affirmative defense to her postconviction petition with specificity and that it failed to do so, thus forfeiting that argument. She contends that the State did not reference *Byrd* in its motion to dismiss her postconviction petition nor did it address whether she filed a direct appeal on the merits, which was relevant to whether the Act's three-year filing period applied. Therefore, she concludes, the trial court was acting as an advocate for the State when it *sua sponte* asked the parties to address *Byrd*. She argues that, "[u]nlike Europe, ours is an adversarial system" and it was up to the parties, not the judge, to

frame claims and raise issues. She asserts that, when a judicial officer exceeds his or her role by assuming the role of the prosecutor or advocate, as she concludes occurred here, we should reverse and remand for a hearing before a different judge.

¶ 21    The State responds that the trial court properly considered *Byrd* and did not act as an advocate for the State. The State directs us to its December 7, 2020, motion to dismiss defendant's supplemental and amended postconviction petitions, in which it raised the issue that defendant's petition was untimely. It argues that it provided the deadline for defendant to file her postconviction petition based on the specific facts in this case, including the entry of judgment and the time to file a *certiorari* petition. The State further argues that, in defendant's response to its motion to dismiss, she argued that she had three years from the date of her conviction to file her postconviction petition, because she did not file a direct appeal. It continues that the trial court invited both parties to provide input on the applicability of *Ross* and *Byrd* and the court held a lengthy hearing before determining that the three-year filing period under section 122-1(c) of the Act did not apply to defendant's postconviction petition.

¶ 22    We reject defendant's arguments that the State forfeited its timeliness argument and that the trial court acted as an advocate for the State in considering the timeliness of her postconviction petition. Here, the State raised the timeliness issue in its motion to dismiss at the second stage of postconviction proceedings. It specifically argued that the six-month period provided by section 122-1(c) applied to defendant's petition. Section 122-1(c) provided, in relevant part:

> "*If a petition for certiorari is not filed*, *no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition*, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. *If a defendant does not file a direct appeal, the post-conviction petition shall be filed no*

*later than 3 years from the date of conviction*, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." (Emphases added.) 725 ILCS 5/122-1(c) (West 2006).

¶ 23 Although defendant is correct that the State's motion did not explicitly address whether the three-year period under section 122-1(c) of the Act applied, we note that the two time periods at issue are found in consecutive sentences under the same subsection of the Act and that the State's argument that one period applied reasonably implied that the other did not. What is more, defendant herself argued in her response that the three-year filing period applied. Thus, even if we were to accept defendant's argument that the State failed to develop sufficiently the timeliness issue in its motion to dismiss, defendant invited the trial court's consideration of the three-year filing period. See *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) ("[U]nder the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error." (Internal quotation marks omitted.)).

¶ 24 Having determined that the timeliness issue, including whether the three-year filing period applied, was raised by the parties ahead of the hearing, we have absolutely no basis to say that the trial court was acting as an advocate for the State in asking the parties to address *Byrd*. Far from transgressing its role as a judge and acting as an advocate, the trial court researched case law applicable to the question the parties put before it. It found *Byrd*, and it asked the parties to address *Byrd* at the hearing on the State's motion to dismiss. Following the hearing, it invited the parties to brief it on whether to follow *Byrd* or *Ross*, and defendant filed a memorandum of law in response. We note that, in *Byrd*, the court addressed the same question on which the State's timeliness argument hinged: whether the defendant filed a direct appeal for purposes of section

122-1(c), thus precluding the statute's three-year filing period. *Byrd*, 2018 IL App (4th) 160526, ¶ 47. As such, the trial court's request that the parties address *Byrd* was both proper and prudent.

¶ 25                              B. Timeliness of the Postconviction Petition

¶ 26    We now turn to the merits of defendant's argument that her postconviction petition was timely. Defendant argues that the timeliness issue is one of first impression before the Second District. She frames the issue as whether a defendant has three years to file a postconviction petition under section 122-1(c) of the Act when she has entered a negotiated guilty plea but failed to perfect a direct appeal due to ineffective assistance of counsel in failing to move timely to withdraw a guilty plea and vacate judgment. She contends that the three-year period applied to her postconviction petition.

¶ 27    Defendant asserts five reasons why the trial court erred in determining that section 122-1(c)'s three-year period did not apply to her petition: (1) *Ross* and *Byrd* are in direct conflict, and *Ross* was well reasoned; (2) *Byrd* was wrongly decided; (3) *Ross* was not distinguishable based on the amended language of section 122-1(c); (4) the trial court was not bound by *Byrd*; and (5) defendant cannot be penalized for following *Ross*, because it was the case law in effect at the time she filed her postconviction petition.

¶ 28    First, defendant characterizes *Byrd* and *Ross* as considering the same legal question but reaching "diametrically opposed" conclusions. She argues that *Ross* was in harmony with not only the plain language of section 122-1(c) but also Illinois Supreme Court Rule 604(d) (eff. Aug. 1, 1992), which provided that "*[n]o appeal shall be taken upon a negotiated plea of guilty* challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment." (Emphasis added.) She stresses that the language of Rule 604(d) providing that "no appeal shall be taken"

demonstrates that *Ross* was correct to conclude that no direct appeal is filed when counsel fails to timely move to withdraw the plea of guilty and vacate the judgment.

¶ 29     Second, defendant argues that *Byrd* was wrongly decided, emphasizing the case's "fatal" reliance on the language of Illinois Supreme Court Rule 606(a) (eff. Mar. 20, 2009). She contends that Rule 606(a) had to be read in conjunction with Rule 606(b), which begins: "Except as provided in Rule 604(d), ***." Ill. S. Ct. R. 606(b) (eff. Mar. 20, 2009). She argues that Rule 606(b) directly limits Rule 606(a), asserting that Rule 606(a) should be read as: "Except as provided for in Rule 604(d), appeals shall be perfected by filing a notice of appeal."

¶ 30     Third, defendant contends that, while *Ross* interpreted an earlier version of section 122-1(c), both the pre- and post-amended version provided a three-year filing period as one of the possible periods to file a postconviction petition. Defendant also directs us to legislative hearings in which a representative states that the three-year period was not being lengthened or shortened and that the revisions were only clarifying the three-year deadline.

¶ 31     Fourth, defendant argues that the trial court was not bound to follow *Byrd*. She contends that there was no supreme court or Second District opinion on point and therefore, because *Byrd* and *Ross* were in conflict, the trial court should have exercised its discretion to decide which to follow.

¶ 32     Fifth and last, defendant argues that *Ross* was the only relevant authority at the time she filed her postconviction petition, that *Ross* supported that her petition was timely, and that therefore the trial court should not have dismissed her petition on timeliness grounds.

¶ 33     The State responds that defendant's argument is without merit because she filed a direct appeal. It argues that, under the plain language of section 122-1(c), the three-year period applies

when a petitioner *does not file* a direct appeal; it is not contingent on whether an appeal is heard on the merits. It contends that *Byrd* is directly on point.

¶ 34    We review *de novo* the dismissal of a postconviction petition at the second stage. *People v. Johnson*, 2017 IL 120310, ¶ 14. Here, defendant's argument boils down to an issue of statutory construction, which we also review *de novo*. *Williams v. Bruscato*, 2019 IL App (2d) 170779, ¶ 17. The primary goal of statutory construction is to ascertain and give effect to the intent of the legislature, and the most reliable indicator of the legislature's intent is the language of the statute itself, given its plain and ordinary meaning. *Id.* ¶ 18. We construe a statute as a whole, so that no part is rendered meaningless or superfluous. *People v. Diggins*, 235 Ill. 2d 48, 54 (2009). Where the language of the statute is clear and unambiguous, we will apply the statute as written, without resort to aids of statutory construction. *Id.* at 54-55. Only where the statute is ambiguous may we rely on extrinsic aids such as legislative history. *Barrall v. Board of Trustees of John A. Logan Community College*, 2019 IL App (5th) 180284, ¶ 10. The language of a statute is ambiguous if it is susceptible to more than one reasonable interpretation. *People v. Boyce*, 2015 IL 117108, ¶ 22.

¶ 35    Defendant was not sentenced to death, and therefore section 122-1(c) provided three possible time periods to file a postconviction petition, absent showing that delay was not due to culpable negligence: (1) six months from the conclusion of proceedings in the United States Supreme Court; (2) if she did not file a petition for leave to appeal or a petition for *certiorari*, six months from the date for filing that petition;[1] and (3) if she did not "file a direct appeal," three

---

[1] Although the language of the statute explicitly mentions only a petition for *certiorari* and not a petition for leave to appeal, our supreme court has explained that the six-month period for filing a postconviction petition begins at the date to have filed a petition for *certiorari* or a petition

years from the date of her conviction. 725 ILCS 5/122-1(c) (West 2006). The first period is not at issue here, and defendant and the State disagree on whether the second or third period applies.

¶ 36    Simply put, we must interpret whether defendant filed a direct appeal for purposes of section 122-1(c). If she did file a direct appeal, then she had six months from October 23, 2006,[2] to file a postconviction petition. If she did not file a direct appeal, then she had three years from August 13, 2004, the date of the judgment of conviction, to file a petition. To answer this question, we begin with a discussion of the two cases on which defendant predicates her argument: *Byrd* and *Ross*.

¶ 37    In *Ross*, the appellate court addressed whether the defendant had three years or six months to file his postconviction petition under section 122-1(c) (725 ILCS 5/122-1(c) (West 2002)). *Ross*, 352 Ill. App. 3d at 619. The defendant had pled guilty to felony murder and was sentenced to 60 years' imprisonment, which was the sentencing cap the State had agreed to recommend. *Ross*, 352 Ill. App. 3d at 617-18. Neither the defendant nor his counsel filed a timely postplea motion. The defendant did file a *pro se* petition to withdraw his guilty plea and vacate his sentence, but the trial court denied it as untimely and for lack of subject matter jurisdiction. *Id.* at 618. The defendant directly appealed the denial, and his appointed appellate counsel moved to dismiss the appeal based on his failure to comply with Rule 604(d). *Id.* The appellate court granted the motion and dismissed the appeal. *Id.* Thereafter, the defendant filed a *pro se* postconviction petition alleging, *inter alia*,

---

for leave to appeal. *Johnson*, 2017 IL 120310, ¶ 24.

[2] Following the September 19, 2006, dismissal of defendant's direct appeal, she had 35 days to petition for leave to appeal to the Illinois Supreme Court. See Ill. S. Ct. R. 315(b) (eff. Aug. 15, 2006).

ineffective assistance of trial and appellate counsel. *Id.* Ultimately, the trial court dismissed the petition as untimely. *Id.* at 619.

¶ 38    On appeal, the defendant argued that, because he failed to perfect a direct appeal, he had three years from the date of his sentencing, not six months after the due date for his petition for leave to appeal, to timely file a postconviction petition. *Id.* The court began its analysis by providing the applicable version of section 122-1(c):

> " 'No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed *** or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence.' " *Id.* (quoting 725 ILCS 5/122-1(c) (West 2002)).

The court continued that, when a defendant fails to comply with the postplea requirements of Rule 604(d), "[a] notice of appeal filed in the trial court *** vests the appellate court with authority to consider only the trial court's jurisdiction—not the merits of the cause." *Id.* (citing *People v. Flowers*, 208 Ill. 2d 291 (2003)). It reasoned that, for postconviction purposes, a direct appeal dismissed for failure to comply with Rule 604(d) was "tantamount to no appeal at all." *Id.* at 620. Applying this reasoning, the court concluded that the defendant's noncompliance with Rule 604(d) precluded appellate review and that, for purposes of the Act, no direct appeal was taken. *Id.* As no appeal was taken, "[t]he Act's six-month limitation period was not triggered, and defendant had three years from the date of his conviction to file a timely petition for postconviction relief." *Id.*

¶ 39    In *Byrd*, the appellate court directly examined the question of what the phrase "file a direct appeal" meant under section 122-1(c). *Byrd*, 2018 IL App (4th) 160526 ¶¶ 48-53. There, the defendant pled guilty to five counts of armed robbery and one count of attempted armed robbery

and agreed to serve 34 years' imprisonment in exchange for the dismissal of other cases pending against him. *Id.* ¶ 7. The defendant filed an untimely *pro se* motion to withdraw his guilty plea. *Id.* ¶ 15. The defendant then filed a *pro se* notice of appeal, which was ultimately dismissed upon motion by the Office of the State Appellate Defender. *Id.* ¶¶ 17, 25. Thereafter, the defendant filed a postconviction petition alleging ineffective assistance of counsel, and his petition advanced to the second stage. *Id.* ¶¶ 27, 29. The State moved to dismiss his petition, arguing in part that the petition was untimely. *Id.* ¶ 31. Following a hearing, the trial court dismissed the petition on several grounds, including that the petition was untimely. *Id.* ¶ 40.

¶ 40    On appeal from the dismissal of the defendant's postconviction petition, he argued that his petition was timely because he " 'could not pursue a direct appeal,' due to his failure to comply with Illinois Supreme Court Rule 604(d) (eff. Sept. 1, 2006)" and therefore, under section 122-1(c) of the Act, he should have been allowed three years from the time of his conviction to file his petition. *Id.* ¶ 46. He argued that, under the reasoning of *Ross*, no direct appeal was taken in his case. *Id.*

¶ 41    In interpreting section 122-1(c), the *Byrd* court found the language to be clear and unambiguous, and it determined that the three-year filing period was conditioned on the "act of filing a direct appeal," not the " 'pursuit' of an appeal or the manner in which it is resolved." *Id.* ¶ 49. It found *Ross* distinguishable, explaining that *Ross* interpreted an earlier version of section 122-1(c), which did not contain the limiting language "[i]f a defendant does not file a direct appeal." (Emphasis and internal quotation marks omitted.) *Id.* ¶ 50.

¶ 42    As to what constituted the filing of a direct appeal, the court found persuasive the supreme court's comments in *Johnson*, 2017 IL 120310. *Byrd*, 2018 IL App (4th) 160526, ¶ 52. In interpreting whether section 122-1(c) imposed a time limit when no petition for leave to appeal

was filed, the *Johnson* court stated that "[t]he statute even provides a three-year deadline for filing a petition *when no notice of appeal is filed*. We see no reason for the legislature to provide a deadline when no notice of appeal has been filed but not to include one when no petition for leave to appeal has been filed." (Emphasis added.) *Johnson*, 2017 IL 120310, ¶ 23. The *Byrd* court explicitly found the supreme court's reference to the filing of the notice of appeal persuasive. *Byrd*, 2018 IL App (4th) 160526, ¶ 52. It bolstered its analysis by citing Illinois Supreme Court Rule 606(a) (eff. Mar. 20, 2009), which provided that appeals are perfected by the filing of the notice of appeal, and it reasoned that, if the filing of a notice of appeal commences a direct appeal under Rule 606(a), it followed that the filing of a notice of appeal constituted the filing of a direct appeal for purposes of section 122-1(c). *Byrd*, 2018 IL App (4th) 160526, ¶ 52. Therefore, the *Byrd* court concluded, the defendant's filing of his notice of appeal commenced his direct appeal and precluded section 122-1(c)'s three-year filing period. *Id.* ¶ 53.

¶ 43    We hold that, for purposes of section 122-1(c), defendant's filing of her notice of appeal on February 21, 2006, constituted the filing of a direct appeal. The word "file" in section 122-1(c) is unambiguous. "File" is defined in relevant part as "to initiate (something, such as a legal action) through proper formal procedure" and "to return to the office of the clerk of a court *without action on the merits*." (Emphasis added.) Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/file (last visited Mar. 2, 2022) [https://perma.cc/Q9FQ-B5MR]. The plain language of section 122-1(c) required that defendant "file" a direct appeal, and to require more than the act of filing—to require a resolution of the appeal on the merits—would be to read language into the statute that is not present. See *People v. Clark*, 2019 IL 122891, ¶ 47 (" 'No rule of statutory construction authorizes this court to declare that the legislature did not mean what the

plain language of the statute imports, nor may we rewrite a statute to add provisions or limitations the legislature did not include.' " (quoting *People v. Smith*, 2016 IL 119659, ¶ 28)).

¶ 44    We agree with *Byrd*'s conclusion that the relevant filing for purposes of filing a direct appeal under section 122-1(c) is the filing of a notice of appeal. *Byrd*'s conclusion is strongly supported by Illinois Supreme Court Rule 606(a) (eff. Mar. 12, 2021), which provides that "[a]ppeals shall be perfected by filing a notice of appeal with the clerk of the trial court." Although defendant argues that Rule 606(a) must be read in conjunction with Rule 606(b), Rule 606(b) addresses the time in which a notice of appeal must be filed, not how an appeal is perfected. Rule 606(b)'s opening clause, "[e]xcept as provided in Rule 604(d)" (Ill. S. Ct. R. 606(b) (eff. Mar. 12, 2021)), modifies the first sentence of Rule 606(b), and defendant's argument that it also modifies the first sentence in Rule 606(a) is unpersuasive.

¶ 45    Furthermore, *Byrd* astutely recognized that our supreme court, in reading section 122-1(c), has used "notice of appeal" interchangeably with "direct appeal." See *Johnson*, 2017 IL 120310, ¶ 23 (section 122-1(c) "even provides a three-year deadline for filing a petition when no notice of appeal is filed"). In *Johnson*, the supreme court read into section 122-1(c) language that the legislature omitted by oversight, therefore providing that a postconviction petition must be filed within six months of the date for filing a petition for *certiorari* or a petition for leave to appeal. *Id.* ¶ 24. In construing the statute to avoid an absurd and unjust result, it could see no reason why the legislature would "provide a deadline when *no notice of appeal has been filed* but not include one when no petition for leave to appeal has been filed." (Emphasis added.) *Id.* ¶¶ 21, 23. The supreme court's language equating the filing of a direct appeal with the filing of a notice of appeal strongly supported *Byrd*'s holding, and it likewise supports ours.

¶ 46    Contrary to defendant's argument, *Ross* was not well reasoned. *Ross* addressed the version of section 122-1(c) that was effective from July 1, 1997, to November 18, 2003, and that version provided in relevant part:

> "No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed *** or 3 years from the date of conviction, *whichever is sooner* ***." (Emphasis added.) 725 ILCS 5/122-1(c) (West 2002).

See Pub. Act 90-14 (eff. July 1, 1997) (amending 725 ILCS 5/122-1). At the outset, we note that *Ross* was not directly interpreting a conditional clause determining when the three-year filing period applied. The court instead arrived at the three-year period by ruling out the six-month period as a possibility. The flaw in *Ross*'s analysis was its conclusion that, because noncompliance with Rule 604(d) precluded the appellate court from reaching the merits of the defendant's direct appeal, the Act's six-month filing period was not triggered. This conclusion assumed, and in fact required, that, when the defendant's appeal was dismissed, he could not petition for leave to appeal to the Illinois Supreme Court. This simply was not true—a defendant whose appeal is dismissed, whether for noncompliance with Rule 604(d) or for lack of appellate jurisdiction, may file a petition for leave to appeal to the Illinois Supreme Court. See *People v. Bailey*, 2014 IL 115459, ¶¶ 1-4 (granting the defendant's petition for leave to appeal where the appellate court dismissed the direct appeal for lack of jurisdiction); *People v. Foster*, 171 Ill. 2d 469, 470-71 (1996) (granting the defendant's petition for leave to appeal where the appellate court dismissed the direct appeal for failure to comply with Rule 604(d)). Under the plain language of section 122-1(c) at the time, the relevant filing period for the *Ross* defendant should have been either six months from the date he had to file a petition for leave to appeal or three years from the date of conviction, whichever was

sooner. Thus, *Ross* is not persuasive, even if it were not distinguishable on the basis of interpreting an outdated version of the statute.

¶ 47    We also reject defendant's argument based on legislative history. First of all, the pertinent language in section 122-1(c) is unambiguous such that we would not look beyond its plain language, but even if we were to find the language ambiguous, the legislative history cited by defendant does not aid her position. Defendant cites the House of Representatives proceedings on this statute, where, in the context of a proposed amendment to the Capital Litigation Trust Fund, Representative Turner stated that the time to file a postconviction petition was not being changed but rather was being "clarifie[d]." 93d Ill. Gen. Assem., House Proceedings, May 27, 2004, at 21 (statements of Representative Turner). That is, the length of time to petition remained at three years, but what was changing was "when the 3 years start." *Id*. at 22. The representative's statements would not have reasonably supported that the language eventually added to section 122-1(c), "[i]f a defendant does not file a direct appeal," required more than the filing of a notice of appeal; the statements would have reasonably supported simply that the statutory filing period remained three years and that the period was now applicable when a defendant does not file a direct appeal.

¶ 48    Last, we reject defendant's argument that she cannot be penalized for relying on *Ross*. The case defendant relies upon, *Central City Education Ass'n, IEA-NEA v. Illinois Educational Labor Relations Board*, 199 Ill. App. 3d 559 (1990), is readily distinguishable. There, the petitioner argued that its appeal had been filed two months before a separate case was decided, which held that such appeals had to be filed within 30 days instead of 35 days. *Id.* at 563. The court held that the 30-day period did not apply retroactively to the petitioner's appeal. *Id.* at 563-64. The court noted that the respondent's order had directed the petitioner to the law providing for the 35-day

filing period for an appeal. *Id.* at 562. Here, defendant raises no issue of retroactivity. Rather, at the time that defendant's direct appeal was dismissed, the version of the statute that *Ross* interpreted had been amended over two years prior, and there is no indication in the record that defendant was relying on *Ross* in the first place.

¶ 49　In sum, defendant's February 21, 2006, notice of appeal constituted the filing of a direct appeal under the plain language of section 122-1(c). As such, defendant did not have three years from the date of the judgment of conviction to file a postconviction petition, but instead she had six months from the date she had to file a petition for leave to appeal. She did not file within those six months, and she does not argue that such delay was not due to her culpable negligence. Therefore, the trial court properly dismissed her petition as untimely at the second stage of postconviction proceedings.

¶ 50　　　　　　　　　　　　　　III. CONCLUSION

¶ 51　For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 52　Affirmed.

---

**No. 2-21-0197**

---

| | |
|---|---|
| **Cite as:** | *People v. Lighthart*, 2022 IL App (2d) 210197 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 02-CF-3683; the Hon. Robert Randall Wilt, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Steven W. Becker, of Law Office of Steven W. Becker LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | J. Hanley, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, and Stephanie Hoit Lee, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---